**In re David Lionel JONES and Celia Ann Jones, Debtors.**

**Bankruptcy No. 93–40816.**

United States Bankruptcy Court, E.D. Texas, Sherman Division.

June 7, 1994.

Robert E. Barron, Nederland, TX, for debtors.

Mary A. Daffin, Houston, TX, for Creditor Comerica Mortg. Real Estate Loans.

## ORDER DENYING CONFIRMATION

C. HOUSTON ABEL, Chief Judge.

Before the Court is the confirmation of the Debtors' Chapter 13 plan. Comerica Mortgage Real Estate Loans ("Comerica") filed an objection to confirmation of the Debtors' plan. After considering arguments of counsel and reviewing the relevant law, the Court is of the opinion that confirmation should be

---

**1.** Petition was filed June 8, 1993.

DENIED. This order shall constitute the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

## JURISDICTION

This Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 157(a) and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L).

## BACKGROUND

On August 8, 1990, the Debtors executed a Note payable to SCM Mortgage Company, Inc. in the original principal amount of $49,-350.00, with interest at 10.5%. The Note is secured only by a Deed of Trust which grants a first lien against the Debtors' principal residence. Both the Note and the Deed of Trust were assigned to Comerica. Subsequent to the Debtors filing for relief under Chapter 13,[1] Comerica filed a proof of claim asserting total prepetition arrearages of $10,-427.50, with an outstanding principal amount of $48,946.41. Pursuant to the Debtors' Chapter 13 plan, the Debtors will cure the arrearages over thirty-eight months. However, the Debtors do not propose to pay interest on the arrearages because Comerica is undersecured.[2]

According to the Debtors, there is no requirement in either the Note or by law that they pay interest on the prepetition arrearages. The Debtors assert that the Note does not provide for the payment of such interest and that the holding in *Rake v. Wade*, — U.S. ——, 113 S.Ct. 2187, 124 L.Ed.2d 424 (1993) should be limited to oversecured creditors. Comerica asserts to the contrary that the Note indeed provides that interest be paid on arrearages; thus, the Debtors may not modify this right in their plan. *See Nobelman v. Am. Sav. Bank*, — U.S. ——, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993).

## ANALYSIS

A. *Whether Note Provides For Interest On Arrearages*

█ The provision in the Note which Comerica relies upon as requiring that interest be paid on arrearages is as follows:

---

**2.** Such interest is typically referred to as "default interest".

**(C) Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing the Note. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal ... (the rest of this sentence is illegible).

Comerica's reliance on this provision is misplaced. Based on a plain reading of this provision, it is evident that it does not address the issue of whether interest shall be paid on arrearages. This provision just encompasses the payment of interest on incurred *collection* costs and expenses; i.e., attorney's fees and expenses and court costs. Interest on arrearages is not a collection cost. Lenders charge interest on arrearages to ensure that the lender does not lose the present value of its money while it waits to collect what is due. Also, many lenders charge a higher interest rate on arrearages than the stated contract rate in order to discourage late payments. The amount subject to this potentially higher interest rate is based upon the extent the Debtors are delinquent with their payments on the Note. Thus, interest on arrearages is directly related to the underlying debt. Costs and expenses incurred to enforce the Note, on the other hand, are distinct from the underlying debt. The determination and extent of this amount is not based on the amount the Debtors are delinquent on the Note. The amount incurred to collect on the Note is not directly correlated to the amount past due on the Note. It is the costs incurred to collect that this provision addresses. Therefore, because the provision in the Note that Comerica relies upon is not applicable, there is no requirement pursuant to the Note that interest on arrearages be paid.[3]

**B.** *Does Rake v. Wade Apply?*

Based on the uncontradicted testimony of David Jones,[4] the Court is of the opinion that the value of the property is $47,000.00. Thus, the Debtors have no equity in the property thereby making Comerica an undersecured creditor. Because Comerica is undersecured, the Debtors assert that *Rake* is not applicable.

In *Rake*, the Supreme Court held that an oversecured creditor was entitled to both pre- and postconfirmation interest on arrearages to be paid under a Chapter 13 plan, even in the absence of a contractual provision or state law providing for such interest. The Supreme Court's ruling was primarily based upon the interpretation of two sections of the Bankruptcy Code. First, 11 U.S.C. § 506(b)[5] grants the holder of an oversecured claim an "unqualified" right to postpetition interest, "regardless of whether the agreement giving rise to the claim provides for interest". *Rake*, ⎯ U.S. at ⎯, 113 S.Ct. at 2190. *See also United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989). Interest allowed under § 506(b) accrues until the secured claim is paid or until the effective date of the plan. *Rake*, ⎯ U.S. at ⎯, 113 S.Ct. at 2190. And second, 11 U.S.C. § 1325(a)(5)[6] provides that each hold-

3. The Notes does provide that a late charge of 4% may be charged if the Debtors are more than fifteen days late with a monthly payment.

4. Comerica offered no evidence to contradict the value David Jones placed on the property.

5. Section 506(b) provides:
To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

6. Section 1325(a) provides in relevant parts:

(a) [T]he court shall confirm the plan if—
. . . .
(5) with respect to each allowed secured claim provided for by the plan—
(A) the holder of such claim has accepted the plan;
(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and
(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or
(C) the debtor surrenders the property securing such claim to such holder;
. . . .

er of an allowed secured claim, who has not accepted the plan or had its collateral surrendered, receive the present value of the claim [7] over the life of the plan. *Rake,* —— U.S. at ——, 113 S.Ct. at 2191. Thus, to insure that the holder of an allowed secured claim is paid the present value of such claim, § 1325(a)(5)(B)(ii) implicitly requires that postconfirmation interest be paid on all arrearages. *Id.*

■■■■ Because Comerica is undersecured, the protection afforded by § 506(b) is not applicable. Accordingly, there is no requirement that the Debtors pay preconfirmation interest on arrearages. However, Comerica's secured claim is afforded the protection under § 1325(a)(5)(B)(ii). In order for the Debtors' plan to be confirmable, the plan must provide that Comerica receive the present value of its allowed secured claim. Unlike § 506(b), § 1325(a)(5)(B)(ii) has no requirement limiting its effect to just oversecured claims. Therefore, the plain language of § 1325(a)(5)(B)(ii) mandates that interest be paid on all claims, including arrearages which comprise a creditor's allowed secured claim. *Rake,* —— U.S. at ——, 113 S.Ct. at 2193; 5 COLLIER ON BANKRUPTCY ¶ 1325.06[4].

### C. Are The Arrearages An "Allowed Secured Claim"?

Section 1325(a)(5) by its own terms is limited to an "allowed secured claim". What is meant by the term "allowed secured claim" in the Bankruptcy Code is very perplexing due to recent Supreme Court decisions. In *Dewsnup v. Timm,* —— U.S. ——, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992), the Supreme Court held that the term "allowed secured claim" is not a term of art and thus is not limited to one meaning. Specifically, the Supreme Court determined that the term had a different meaning within two subsections of § 506, subsection (a) and (d). Under § 506(a), a claim is an "allowed secured claim" to the extent of the value of the collateral securing the claim. *Dewsnup,* —— U.S. at ——, 112 S.Ct. at 776. Under § 506(d), a claim is an "allowed secured claim" if the claim has been fully allowed

pursuant to § 502, irrespective of whether a portion of the claim is unsecured by operation of § 506(a). *Dewsnup,* —— U.S. at ——, 112 S.Ct. at 778. To further complicate the labyrinth the *Dewsnup* decision created for the lower courts in determining what is an "allowed secured claim", the Supreme Court added in a footnote that the Court was expressing "no opinion as to whether the words 'allowed secured claim' have different meaning in other provisions of the Bankruptcy Code." *Dewsnup,* —— U.S. at ——, 112 S.Ct. at 778 n. 3.

Subsequent to *Dewsnup,* the Supreme Court in *Nobelman* held that a Chapter 13 debtor may not use § 506(a) to bifurcate an undersecured claim which is secured only by a debtor's principal residence into a secured claim and an unsecured claim. The Supreme Court stated that although § 506(a) is applicable to Chapter 13, to permit a bifurcation of an undersecured claim secured only by a Debtor's principal residence would violate the secured claimant's rights which are protected by § 1322(b)(2). *Nobelman,* —— U.S. at ——, 113 S.Ct. at 2109–10. Included in the rights protected by § 1322(b)(2) is the right to retain the lien until the debt is paid in full and "the right to bring an action to recover any deficiency remaining after foreclosure." *Nobelman,* at ——, 113 S.Ct. at 2110. The fact that the claim may be undersecured does not reduce any of the "rights" that were "bargained for by the mortgagor and the mortgagee." *Nobelman,* at ——, 113 S.Ct. at 2110 (*citing Dewsnup,* —— U.S. at ——, 112 S.Ct. at 778). Thus, in light of *Nobelman,* the question becomes whether § 506(a) and its determination of "allowed secured claim" is meaningless in Chapter 13 regarding an undersecured claim secured only by a debtor's principal residence such as the case before the Court?

This Court is of the opinion that although a debtor may not be able to use § 506(a) to bifurcate an undersecured claim that is subject to the protection of § 1322(b)(2), § 506(a) is still relevant to the determination of whether the claim is an "allowed secured claim" for purposes of § 1325(a)(5). 1 KEITH

---

7. The present value is as of the "effective date of the plan". 11 U.S.C. § 1325(a)(5)(B)(ii).

M. LUNDIN, CHAPTER 13 BANKRUPTCY § 4.55 (2nd ed. 1994) ("§ 506(a) remains relevant to determine whether a claim holder is entitled to the special 'present value' protection of § 1325(a)(5)(B)(ii)"). The relevance is based upon this Court's belief that the arrearages should be allocated to the secured portion of the mortgage holder's undersecured claim. Such an allocation is consistent with the apparent congressional intent of protecting the home mortgage industry,[8] *see* 11 U.S.C. § 1322(b)(2), and is consistent with pre-*Nobelman* practices of many courts. *See, e.g., In re Terranova,* 152 B.R. 20, 22–23 (Bankr. Conn.1993); *In re Richards,* 151 B.R. 8, 18 (Bankr.Mass.1993); *In re Session,* 128 B.R. 147, 152 (Bankr.E.D.Tex.1991). By balancing a debtor's right to pay the arrearages over a reasonable time [9] with a requirement that the mortgage holder receive the present value of its arrearage claim, the competing policies of the Bankruptcy Code are met. A debtor is afforded an opportunity to "catch up" on past due payments and keep the principal residence while at the same time the mortgage holder is protected by the payment of interest on the arrearages. Accordingly, § 506(a) must be used to determine the extent the undersecured claim is an "allowed secured claim". After this determination is made, the arrearages are allocated to the "allowed secured claim". Postconfirmation interest must then be paid on all arrearages which do not exceed the "allowed secured claim" pursuant to § 1325(a)(5)(B)(ii). On the arrearages which exceed the "allowed secured claim", no postconfirmation interest is required to be paid. *See* 1 KEITH M. LUNDIN, CHAPTER 13 BANKRUPTCY § 4.55 (2nd ed. 1994).

D. *What Interest Rate Is to be Applied?*

The Supreme Court in *Rake* intentionally avoided the controversial issue as to the appropriate rate of interest that debtors must pay on arrearages. *See Rake,* —— U.S. at ——, 113 S.Ct. at 2192 n. 8. Courts have varied in their determination of this issue. *See* 2 KEITH M. LUNDIN, CHAPTER 13 BANKRUPTCY § 5.51 (2nd ed. 1994) (discusses the

different approaches used by courts in determining the appropriate interest rate). Because the parties never addressed this issue, the Court will follow the lead of the Supreme Court and defer its final ruling on the appropriate interest rate to a later date. However, the Court is of the opinion that the determination of the appropriate interest rate should be no different than the approach used in a case under Chapter 11. In that regard, the Court refers the parties to *In re Westwood Plaza Apt., Ltd.,* 147 B.R. 692 (Bankr.E.D.Tex.1992), in which this Court used the prime rate, and *In re Briscoe Enterprises, Ltd.,* 994 F.2d 1160 (5th Cir.1993), in which the Fifth Circuit in *dicta* used the Treasury rate.

## CONCLUSION

Based upon a harmonization of the holdings in *Rake, Dewsnup* and *Nobelman,* the Court is of the opinion that Comerica is entitled to postconfirmation interest on the arrearages. Because the claim for arrearages ($10,427.50) does not exceed the allowed secured claim ($47,000.00), the entire amount of the arrearages is entitled to postconfirmation interest. Accordingly, the Debtors' plan violates § 1325(a)(5)(B)(ii). Although the logic may be different, other courts which have addressed this issue post-*Rake* have reached the same conclusion as this Court. *See In re Brycki,* 161 B.R. 915 (Bankr.N.J. 1993); *In re Casey,* 159 B.R. 963 (Bankr. M.D.Ala.1993); *In re Callahan,* 158 B.R. 898 (Bankr.W.D.N.Y.1993); *see also* Arnold B. Cohen, *Issues in Consumer Bankruptcy,* Vol. 3 No. 2 JOURNAL OF BANKRUPTCY LAW AND PRACTICE 177 (1994). THEREFORE,

IT IS ORDERED that confirmation is DENIED.

IT IS SO ORDERED, ADJUDGED AND DECREED.

---

**8.** In so far as mortgages on principal residences.

**9.** Section 1322(b)(5).