In the Matter of Edwin ARVELO, Jr. and Carmen Nydia Arvelo, Debtors.

Bankruptcy No. 94–10502.

United States Bankruptcy Court, D. New Jersey.

Jan. 9, 1995.

Allison M. Berger, Kasen, Kasen & Braverman, Cherry Hill, NJ, for debtors.

Stephen McNally, Budd, Larner, Gross, Rosenbaum, Greenberg & Sade, Cherry Hill, NJ, for Chemical Mortg. Co.

## OPINION ON DEBTORS' MOTION TO MODIFY CLAIM

JUDITH H. WIZMUR, Bankruptcy Judge.

On this motion, debtors, Edwin Arvelo, Jr. and Carmen Nydia Arvelo, seek to reduce the claim of Chemical Mortgage Company ("Chemical"). Debtors assert that Chemical, as an undersecured creditor, is not entitled to post-petition interest on pre-petition arrearages.

### FACTS AND PROCEDURAL HISTORY

On December 14, 1990, Edwin Arvelo, Jr. and Carmen Nydia Arvelo ("debtors") executed a note to Pioneer Mortgage, Inc. in the amount of $86,361.00, secured by a mortgage on debtors' principal residence, located at 35 Birchwood Lane, Willingboro, New Jersey. The mortgage was duly recorded in the Burlington County Clerk's office on December 20, 1990. The mortgage was subsequently assigned to Chemical Bank and further assigned from Chemical Bank to the Chemical Mortgage Company.

On February 7, 1994, debtors filed this Chapter 13 bankruptcy petition. Chemical's Proof of Claim lists the total amount due as $94,052.03. Pre-petition arrearages total $16,248.38, representing arrearages of $12,-772.06 (including late charges, costs and attorneys' fees) plus post-petition interest on the arrearages of $3,512.32, calculated at the contract rate of ten percent (10%) for a period of 60 months, the term of the Chapter 13 plan. Debtors list the value of the property on their schedules as $85,000.00. Chemical's claim is undersecured.

On this motion, debtors seek to reduce Chemical's claim by $3,512.32, the amount of post-petition interest charged by Chemical on the pre-petition arrearages that are scheduled to be paid through debtors' plan. In support of their motion, debtors contend that Chemical, as an undersecured creditor, is neither entitled to post-petition, pre-confirmation interest on arrearages pursuant to 11 U.S.C. § 506(b), nor post-petition, post-confirmation interest on arrearages pursuant to 11 U.S.C. § 1325(a)(5)(B)(ii), since Chemical does not hold an "allowed secured claim" as defined by section 506(a).

Relying on *Rake v. Wade*, —— U.S. ——, 113 S.Ct. 2187, 124 L.Ed.2d 424 (1993), *Dewsnup v. Timm*, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992) and *Nobelman v. American Savings Bank*, —— U.S. ——, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993), Chemical responds that its claim may be split into two claims, one for the underlying debt and one for the arrearages. Because the scheduled value of debtors' property is greater than the amount of the arrearages due, Chemical asserts entitlement to pre-confirmation interest as an oversecured creditor pursuant to section 506(b). As to post-confirmation interest, Chemical urges that following *Dewsnup*, a secured creditor need not be fully secured (i.e., oversecured) in order to have an allowed secured claim. Chemical contends that *Rake*'s holding requiring post-confirmation interest to be paid to a mortgagee pursuant to section 1325(a)(5)(B)(ii) is not limited to only oversecured creditors.

### DISCUSSION

To resolve debtors' motion, we review the interplay between 11 U.S.C. §§ 506, 1322 and 1325, specifically §§ 506(a) and (b), and 1325(a)(5)(B)(ii), in light of the three recent United States Supreme Court decisions interpreting these sections, *Rake v. Wade*,

*Dewsnup v. Timm,* and *Nobelman v. American Savings Bank.*

### 1. Applicable Statutes and Caselaw

Section 506(a), which applies to Chapter 13 proceedings pursuant to 11 U.S.C. § 103(a), *Nobelman v. American Savings Bank,* —— U.S. at ——, 113 S.Ct. at 2110; *In re Jones,* 168 B.R. 146, 149–50 (Bankr.E.D.Tex.1994), determines the status of a secured creditor's claim by separating an undersecured creditor's claim into two parts: a secured portion to the extent of the value of the collateral and an unsecured portion for the balance of the claim. "[R]eferences to secured claims are only to the claim determined to be secured under this subsection, and not to the full amount of the creditor's claim." H.R.Rep. No. 595, 95th Cong., 1st Sess. 356 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 68 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5854, 6312.[1]

Under section 506(b), holders of oversecured claims are allowed post-petition interest on their claims until payment of the secured claim, or until confirmation of the debtor's plan.[2] *Rake,* —— U.S. at ——, 113 S.Ct. at 2190 (citing *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989)).

Section 1322(b) authorizes debtors to modify secured claims, but proscribes modification of claims secured only by the debtor's principal residence, 11 U.S.C. § 1322(b)(2), with the exception that debtors may cure home mortgage defaults through the Chapter 13 plan. 11 U.S.C. § 1322(b)(5).[3]

Finally, section 1325, setting out the elements of a confirmable plan, provides in part that as to each allowed secured claim provided for by the plan, the lienholder either accepts the plan, the debtor surrenders the property subject to the lien to the lienholder, or the lienholder retains the lien and receives the present value of any property to be distributed under the plan on account of such claim.[4] "[U]nless the creditor accepts the plan or the debtor surrenders the collateral

---

1. Section 506(a) provides in pertinent part:
   An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim.
   11 U.S.C. § 506(a).

2. Section 506(b) provides that:
   To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.
   11 U.S.C. § 506(b).

3. **1322. Contents of plan.**
   (b) Subject to subsections (a) and (c) of this section, the plan may—

   (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;

   (5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and mainte-

nance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due.
   11 U.S.C. § 1322(b)(2), (5).

4. Section 1325(a) provides in pertinent part:
   (a) Except as provided in subsection (b), the court shall confirm a plan if—

   (5) with respect to each allowed secured claim provided for by the plan—
   (A) the holder of such claim has accepted the plan;
   (B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and
   (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or
   (C) the debtor surrenders the property securing such claim to such holder.
   11 U.S.C. § 1325(a)(5).

to the creditor, § 1325(a)(5)(B)(ii) guarantees that property distributed under a plan on account of a claim ... must equal the present dollar value of such claim as of the confirmation date ..., which implies the payment of interest." *Rake v. Wade,* —— U.S. at ——, 113 S.Ct. at 2191.

With this statutory backdrop, in *Rake v. Wade,* the Supreme Court, noting a split among the Circuits on the issue of interest on arrearages,[5] considered separately the post-petition periods preceding and following the confirmation of a Chapter 13 plan, and determined that debtors who seek to cure a default on an oversecured home mortgage pursuant to section 1322(b)(5) must pay post-petition interest on arrearages to the mortgagee during both the pre- and post-confirmation periods under sections 506(b) and 1325(a)(5), respectively.

In *Rake,* each of the three pairs of debtors was in default on long-term promissory notes secured by a mortgage on their respective principal residences. Because the value of the residence owned by each pair of debtors exceeded the value of the mortgagee's claim (including arrearages), the mortgagee was an oversecured creditor with respect to each pair of debtors. *Id.* at ——, 113 S.Ct. at 2189. In their respective Chapter 13 plans, the debtors proposed to cure the arrears on each note without interest over the terms of the plans while continuing to make regular payments on the mortgage with respect to the original mortgage documents. Asserting entitlement to interest on the arrearages, the mortgagee in each case objected to the plan.[6]

The Court held that nothing in the "cure" and "modification" provisions of section 1322(b) would preclude the imposition of interest on payments of arrears under § 506(b) for post-petition, pre-confirmation payments, or under § 1325(a)(5) for post-petition, post-confirmation payments. As to section 506(b) pre-confirmation interest payments, the Court stated:

> While § 1322(b)(5) authorizes a Chapter 13 plan to provide for payments on arrearages to effectuate a cure after the effective date of the plan, nothing in that provision dictates the terms of the cure. In particular, § 1322(b)(5) provides no indication that the allowed amount of the arrearages cured under the plan may not include interest otherwise available as part of the oversecured claim under § 506(b).... Construing §§ 506(b) and 1322(b)(5) together, and giving effect to both, we conclude that § 1322(b)(5) authorizes a debtor to cure a default on a home mortgage by making payments on arrearages under a Chapter 13 plan, *and that where the mortgagee's claim is oversecured, § 506(b) entitles the mortgagee to pre-confirmation interest on such arrearages.*

*Id.* at ——, 113 S.Ct. at 2192 (emphasis added).

---

5. *Compare In re Laguna,* 944 F.2d 542 (9th Cir. 1991) (no interest allowed), *cert. denied,* —— U.S. ——, 112 S.Ct. 1577, 118 L.Ed.2d 219 (1992); *Landmark Financial Services v. Hall,* 918 F.2d 1150 (4th Cir.1990) (same); *Appeal of Capps,* 836 F.2d 773 (3d Cir.1987) (same); *In re Terry,* 780 F.2d 894 (11th Cir.1985) (same) *with In re Colegrove,* 771 F.2d 119 (6th Cir.1985) (interest allowed).

6. The bankruptcy court overruled the mortgagee's objections and the district court affirmed the lower court's decision, finding that the Chapter 13 provisions relating to the curing of defaults, 11 U.S.C. §§ 1322(b)(2) and 1322(b)(5), "do not alter the contract between the parties governing such matters as interest, if any, to be paid on arrearages," and that allowing interest on arrearages would be "improper," since the notes did not provide for it. *Id.*

The Tenth Circuit Court of Appeals reversed, holding that section 506(b) of the Bankruptcy Code entitles an oversecured creditor to post-petition interest on arrearages even if the mortgage documents are silent on the subject and where state law would not require interest to be paid. *Wade v. Hannon,* 968 F.2d 1036, 1042 (10th Cir.1992). The Tenth Circuit saw no reason to treat oversecured mortgagees, which held claims secured only by a security interest in the debtor's principal residence, any differently from other oversecured creditors. *Id.* The court relied on the only Court of Appeals opinion which permitted interest on arrears, *In re Colegrove,* 771 F.2d 119 (6th Cir.1985), "which reached the same result but rested its decision on § 1325(a)(5) as well as § 506(b) of the Bankruptcy Code." *Rake,* —— U.S. at ——, 113 S.Ct. at 2189. The four other Courts of Appeals had determined that the payment of interest on arrears would constitute an improper modification of the mortgagee's rights in violation of section 1322(b). *Id.* The Supreme Court granted certiorari to resolve the conflict.

As to section 1325(a)(5) post-confirmation interest payments "with respect to each allowed secured claim provided for by the plan", the Court determined that debtors' plans to cure the arrearages on home mortgage claims constituted "provision for" the mortgagee's allowed secured claims, within the contemplation of § 1325(a)(5). The Court's attention was focused upon debtor's argument that § 1325(a)(5)(B)(ii), entitling secured creditors to the payment of interest, does not apply to home mortgage loans because § 1322(b)(2) proscribes modification of such secured claims. Rejecting this argument, the Court concluded that there was no impediment to the imposition of the § 1325(a)(5)(B) interest requirement on a debtor who was curing a home mortgage loan, if the creditor held an "allowed secured claim" that was "provided for" for section 1325(a)(5) purposes. The Court placed emphasis upon the "provided for" language in § 1325(a)(5). While recognizing that each of the claims of the home mortgage lenders, which claims included arrearages, were oversecured, *Id.* at ——, 113 S.Ct. at 2191 n. 7, the Court did not address the definition of "allowed secured claim," or whether an undersecured home mortgage lender could receive interest payments under § 1325(a)(5)(B) during the life of the Chapter 13 plan.

In an earlier decision, arising in the context of lien avoidance under section 506(d),[7] the Supreme Court in *Dewsnup v. Timm,* 502 U.S. 410, 414–16, 112 S.Ct. 773, 777, 116 L.Ed.2d 903 (1992) addressed the applicability of the definition of an "allowed secured claim" under section 506(a) to 506(d) and explained that "the words 'allowed secured claim' in § 506(d) need not be read as an indivisible term of art defined by reference to § 506(a), which by its terms is not a definitional provision." Rejecting debtor's argument that sections 506(a) and 506(d), read together, permit a debtor to avoid a lien under subsection (d) to the extent that the claim exceeds the value of the collateral under subsection (a), the Court determined that "the words ["allowed secured claim"] should be read term-by-term to refer to any claim that is, first, allowed, and, second, secured." *Id.* Because the claim at issue was both allowed and secured, the lien on debtor's property could not be avoided under § 506(d).

The *Dewsnup* court focused on the absence of pre-Code provisions permitting involuntary reduction of the amount of a creditor's lien, and the absence of any indication in the Bankruptcy Code legislative history of congressional intent to effect a change in pre-Code law on lien avoidance. *Id.* 502 U.S. at 416–20, 112 S.Ct. at 778–79. The Court noted that

> Were we writing on a clean slate, we might be inclined to agree with petitioner that the words "allowed secured claim" must take the same meaning in § 506(d) as in § 506(a). But, given the ambiguity in the text, we are not convinced that Congress intended to depart from the pre-Code rule that liens pass through bankruptcy unaffected.

*Id.* at 417, 112 S.Ct. at 778. Reluctant to grant the debtor a "broad new remedy", the Court refused "to effect a major change in pre-Code practice that is not the subject of at least some discussion in the legislative history." *Id.* at 419, 112 S.Ct. at 779. The Court expressly limited it's decision to section 506(d) and "express[ed] no opinion as to whether the words 'allowed secured claim' have different meaning in other provisions of the Bankruptcy Code." *Id.* at 417 n. 3, 112 S.Ct. at 778 n. 3.

The third of the trilogy of recent Supreme Court cases that impacts upon our review here is *Nobelman v. American Savings Bank,* —— U.S. ——, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993). In *Nobelman,* the Court held that although section 506(a) is applicable to Chapter 13 cases, the section could not

---

7. Section 506(d) states:
  (d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void unless—
  (1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or
  (2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.
11 U.S.C. § 506(d).

serve to bifurcate an undersecured claim secured only by the debtor's principal residence and thus violate the rights of home mortgage lenders protected by § 1322(b)(2). *Id.* at ————, 113 S.Ct. at 2109–10.[8] The opportunity of a Chapter 13 debtor to bifurcate an undersecured mortgagee's claim into separate secured and unsecured claims and to reduce the mortgage to the fair market value of the mortgaged residence was rejected. The Court interpreted the proscription against modification of the rights of a holder of "a claim secured only by a [homestead lien]" to include a proscription against modification of the lienholder's entire claim, including both the secured and unsecured components of the claim. *Id.* at ————, 113 S.Ct. at 2111.

With regard to the application of section 506(a) to section 1322(b)(2), the Court stated:

> Petitioners were correct in looking to § 506(a) for a judicial valuation of the collateral to determine the status of the bank's secured claim. It was permissible for petitioners to seek a valuation in proposing their Chapter 13 plan, since § 506(a) states that "[s]uch value shall be determined ... in conjunction with any hearing ... on a plan affecting such creditor's interest." But even if we accept petitioners' valuation, the bank is still the "holder" of a "secured claim," because petitioners' home retains $23,500 of value as collateral. The portion of the bank's claim that exceeds $23,500 is an "unsecured claim componen[t]" under § 506(a), *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 239 n. 3, 109 S.Ct. 1026, 1030 n. 3, 103 L.Ed.2d 290 (1989) (internal quotation

marks omitted); however, that determination does not necessarily mean that the "rights" the bank enjoys as mortgagee, which are protected by § 1322(b)(2), are limited by the valuation of its secured claim.

*Id.* at ————, 113 S.Ct. at 2110. For our purposes here, we highlight that the *Nobelman* court did not hold that section 506(a) does not apply to section 1322(b)(2), or that an undersecured mortgagee's claim is "deemed" fully secured for purposes of section 1322(b)(2).

2. *Pre–Confirmation Interest Under § 506(b)*

■ Based on the foregoing, we conclude that Chemical, as an undersecured creditor, is not entitled to post-petition, pre-confirmation interest payments under § 506(b). We understand from our reading of *Rake* that nothing in either sections 1322(b)(2) or (b)(5) impedes the literal application of § 506(b) on the question of entitlement to pre-confirmation interest. Under § 506(b), interest is payable pre-confirmation only to the holder of an allowed secured claim. While Chemical certainly holds an allowed claim, as well as a secured claim, § 506(b) requires that interest be payable only where such a claim is secured by property the value of which is greater than the amount of such claim. In this case, the property is valued at $85,000, while the claim is in excess of $94,000.

■ Chemical's contention that its arrearage claim of $12,772.06 must be considered a claim separate and distinct from the portion of its claim for principal and interest, and that, therefore, the value of the property ($85,000) exceeds the amount of the arrear-

---

**8.** Prior to the Supreme Court's decision in *Nobelman,* some courts, including the Third Circuit, interpreted section 1322(b)(2) as protecting only that portion of an undersecured homestead mortgagee's claim that was determined to be a "secured claim" under the provisions of section 506(a). *See, e.g., Sapos v. Provident Inst. of Sav.,* 967 F.2d 918 (3d Cir.1992); *In re Bellamy,* 962 F.2d 176 (2d Cir.1992). These courts reasoned that the term "secured claim" in section 1322 must be defined by reference to section 506(a), and that whether, and to what extent, a mortgagee holds a secured claim must first be determined according to section 506(a). *See Sapos,* 967 F.2d at 924–25; *Bellamy,* 962 F.2d at 179,

182–83. In making this determination, the Third Circuit stated:

> "[W]hether 'secured claim' has the same meaning as it does in § 506(a) must be determined with reference to the particular Code provision at issue. In light of the fact that certain Code provisions implicitly state that the term 'secured claim' is not to be defined as in § 506(a), *see* Code § 1111(b)(2), it is reasonable to assume 'secured claim' ordinarily has the meaning assigned to it in § 506(a), unless to read it in that fashion would be 'contrary to basic bankruptcy principles.'"

*Sapos,* 967 F.2d at 924–25 (quoting *Bellamy,* 962 F.2d at 182–83) (citations omitted).

age claim, must be rejected. We recognize that pursuant to § 1322(b)(5), a cure plan should split a mortgagee's claim into two separate components, one for the underlying debt and the other for the arrearages. *Sapos v. Provident Inst. of Sav.*, 967 F.2d 918 (3d Cir.1992). We also acknowledge the language in *Rake* that refers to the payment of arrearages as "a distinct claim to be paid off within the life of the plan", as separate from payments of principal and interest on the underlying debt which are to be maintained outside of the plan. *Rake,* —— U.S. at ——, 113 S.Ct. at 2193. This language, however, must be understood in the context within which it appears. Characterizing the arrearages as a "distinct claim" appears in the context of an explanation regarding how the secured claims of the home mortgage lenders in *Rake* had been "provided for" by each of the debtor's plans for § 1325(a)(5)(B) purposes. The Court emphasized that "the arrearages owed on the mortgages held by respondent [were] plainly part of respondent's oversecured claims." *Id.* at ——, 113 S.Ct. at 2191. *See also id.* at —— n. 7, 113 S.Ct. at 2191 n. 7 (the allowed oversecured claim includes "arrearages on the note and mortgage").

Here, Chemical's claim is properly characterized as a single claim comprised both of outstanding principal due at the time of the filing of the petition and of arrearages and other charges. The claim has both an allowed secured portion and an allowed unsecured portion. The claim as a whole is undersecured. The claim cannot be divided into its components to arrive at a conclusion, as a predicate to the receipt of pre-confirmation interest under § 506(b), that the value of the property securing the claim is greater then the mortgagee's allowed secured claim. Pre-confirmation interest will not be assessed here.

### 3. *Post–Confirmation Interest Under § 1325(a)(5)(B)*

■■ With respect to Chemical's entitlement to section 1325(a)(5)(B) post-confirmation interest on its undersecured claim, we conclude that interest on the payment of arrearages may be charged only to the ex-

tent that the arrearage claim is "secured" as determined under § 506(a). The ruling in *Rake* does not preclude this result. The imposition of § 1325(a)(5)(B) interest in *Rake* applied only to oversecured creditors, and the Court resolved only that curing arrearages through a Chapter 13 plan qualifies as "providing for" an allowed secured claim in the plan, thus subjecting the payment of arrearages which are fully secured to § 1325(a)(5) present value requirements. The Court did not discuss undersecured claims.

Nor does *Dewsnup* assist us here. The *Dewsnup* court carefully limited its holding, which separated the section 506(a) definition of an "allowed secured claim" from that under section 506(d), to the section 506(d) issue of lien avoidance, because no legislative history could be found to support a substantial departure from pre-Code law proscribing lien modification. The Court acknowledged that the words "allowed secured claim" may have different meaning in other provisions of the Code.

As to *Nobelman*, the Court recognized the applicability of § 506(a) to determine the status of the home mortgage lender's claim, *i.e.,* the extent to which the claim is an allowed secured claim. The phrase in § 1322(b)(2) specifying "a claim secured only by a [homestead lien]" was read to include the lienholder's entire claim, including the secured and unsecured portions. This interpretation does not preclude application of § 506(a) bifurcation to the term "allowed secured claim" for § 1325(a)(5)(B) present value purposes.

As final support for its position that post-confirmation interest may be charged on an undersecured claim, Chemical directs our attention to *In re Brycki*, 161 B.R. 915, 917 (Bankr.D.N.J.1993) and *In re Eastwood*, No. 93–26361 (Bankr.D.N.J. June 22, 1994) (unpublished letter opinion following *Brycki* ). In *Brycki,* the court held that undersecured creditors are entitled to interest under section 1325(a)(5)(B)(ii). The *Brycki* court rejected debtors' argument that under the holding of *Rake v. Wade* only oversecured creditors are entitled to interest on arrearages in Chapter 13, holding instead that "[a]lthough *Rake* held that a creditor must be

oversecured to recover *pre*-confirmation interest on arrearages under § 506(b), *Rake* did not rely on § 506(b) to determine if a mortgagee was entitled to interest on arrearages *post*-confirmation and, instead, looked to Code § 1325(a)(5)." *Brycki*, 161 B.R. at 916. The court reasoned that:

Following the Supreme Court's decision in *Rake*, the only issue is whether an undersecured mortgagee's claim for arrearages is an "allowed secured claim" entitled to interest under Code § 1325(a)(5). The *Rake* Court found that the claim for arrearages, although distinct from the claim for the underlying debt, was an element of the allowed secured claim. The claim for arrearages is secured by the mortgage whether the mortgagee is undersecured or oversecured and must be paid to effectuate a cure under Code § 1322(b).

*Id.* at 917 (citation omitted). *Accord In re Casey*, 159 B.R. 963 (Bankr.M.D.Ala.1993) ("[I]t is abundantly clear that whether the claim of the mortgage holder in a residential home mortgage is over secured or under secured, the pre-petition arrearages are secured by the mortgage."). The *Brycki* court relied as well on *Nobelman*, reasoning that since a home mortgage "is deemed by *Nobelman* to be fully secured for purposes of Code § 1322(b)(2), it must follow that such mortgages are fully secured for purposes of Code § 1325(a)(5)(B) as well." *Id.*

We must respectfully disagree with *Brycki*'s analysis. First, while the Supreme Court in *Rake* held that the arrearages were "plainly part of [the mortgagee's] *oversecured* claims," *Rake*, ——— U.S. at ———, 113 S.Ct. at 2191 (emphasis added),[9] there is nothing in the *Rake* opinion which suggests that the Court was establishing an absolute right to interest regardless of the nature of the mortgagee's claim. It cannot be ignored

that the mortgagee in *Rake* was oversecured. *See In re DeSarno*, 169 B.R. 329, 332 (Bankr. W.D.Pa.1994) (*Rake* held that oversecured creditor is entitled to post confirmation interest.); *In re Lewis*, 170 B.R. 861, 865 (Bankr. D.Md.1994) (The "arrearage portion is repackaged under the plan," but is entitled to interest as any other oversecured claim.). In fact, as noted above, the Supreme Court limits its holding to oversecured mortgagees at the outset of the opinion. *See Rake*, ——— U.S. at ———, 113 S.Ct. at 2189; *see also In re Harned*, 166 B.R. 255, 261 (Bankr.E.D.Pa. 1994) (Scholl, J.) (stating in dicta that the *Rake* Court could have easily stated that section 1325(a)(5) required interest on arrears to be paid to undersecured mortgagees as well as oversecured mortgagees if it meant to so hold). The Court gave no indication as to whether its opinion would also apply in the case of an undersecured home mortgagee.

Second, we cannot reconcile the language in *Nobelman* approving the application of section 506(a) to determine the nature of a home mortgage claim with *Brycki*'s assumption that home mortgages are deemed to be fully secured for purposes of § 1325(a)(5)(B). As stated above, the *Nobelman* opinion does not hold that a home mortgage should be "deemed" fully secured for purposes of section 1322(b)(2). The Court in *Nobelman* focused upon the rights of holders of secured claims, noting that because the debtors could not affect the unsecured portion of their mortgage without affecting the secured portion, the treatment of the mortgage in the manner proposed by the debtors was prohibited. As pointed out by the Third Circuit in *Sapos*, Congress knew how to exclude the provisions of the Bankruptcy Code from the application of section 506(a) when it desired to do so, *Sapos*, 967 F.2d at 924–25 (referring

---

9. The Court stated:

As authorized by § 1322(b)(5), the plans essentially split each of respondent's secured claims into two separate claims—the underlying debt and the arrearages. While payments of principal and interest on the underlying debts were simply "maintained" according to the terms of the mortgage documents during the pendency of petitioners' cases, each plan treated the ar-

rearages as a distinct claim to be paid off within the life of the plan pursuant to repayment schedules established by the plans. Thus, the arrearages, which are a part of respondent's home mortgage claims, were "provided for" by the plans, and respondent is entitled to interest on them under § 1325(a)(5)(B)(ii).

——— U.S. at ———–———, 113 S.Ct. at 2192–93.

to section 1111(b)(2)),[10] and the fact that there is nothing in section 1325(a)(5)(B)(ii) evincing a congressional intention to exclude that section from the application of section 506(a) suggests that this was not Congress's intent.

With no statutory language or case law impeding a literal reading of the term "allowed secured claim", as reflected in § 506(a), we conclude that Chemical holds an allowed secured claim entitling it to post-confirmation interest to the extent of the value of debtor's property, *i.e.,* $85,000. Beyond the value of the property, the remainder of the claim is unsecured and not entitled to interest under § 1325(a)(5)(B)(ii).

### 4. *Allocating Arrearages as Between the Secured and Unsecured Portions of an Undersecured Claim*

We are left with the question of the proper allocation of the pre-petition arrearages as between the secured and unsecured portions of Chemical's undersecured claim. We recall that the proof of claim filed by Chemical cites the total amount due as of the date of the filing of the petition as $94,052.03, of which $12,772.06 constitutes arrearages and other costs, while $3,512.32 is added as interest on the arrearages at ten percent for sixty months. We assume by these figures that the principal due to Chemical at the time of the filing of the complaint was $77,767.65.[11] The debtors intend by their Chapter 13 plan to cure arrearages through the plan while maintaining regular monthly mortgage payments to Chemical during the course of the plan and until the entire claim is satisfied in the normal course.

We understand that of the $90,539.71 claim (principal due at the time of the filing of the complaint plus Chemical's arrearage claim, without interest), $85,000, representing the stipulated value of the property, constitutes the allowed secured claim of Chemical. The balance of $5,539.71 is Chemical's allowed unsecured claim. The dilemma posed here is the manner of allocation of the arrearages ($12,772.06) as between the secured and unsecured portions of Chemical's claim. We have three choices with regard to allocation:

1. The arrearages may be allocated entirely to the secured portion of Chemical's claim. Under this allocation, Chemical would be entitled to interest on the entire amount of arrearages on a post-confirmation basis.

2. The arrearages may be allocated in part to the secured portion of Chemical's claim and in part to the unsecured portion. Beginning with the amount of principal due to Chemical as of the filing of the petition ($77,767.65), a portion of the arrearage claim may be allocated to the remaining secured portion of Chemical's claim ($85,000—$77,767.65, or $7,232.35), with the balance allocated as unsecured debt. Under this analysis, the secured portion of arrearages would be entitled to post-confirmation interest, whereas the unsecured portion would not be so entitled.

3. The arrearages may be included with the outstanding principal portion of Chemical's claim to comprise one overall claim. The percentage of the entire claim that is secured is then calculated, and that percentage is then applied to the arrearage component of the claim to arrive at the portion of the arrearage claim that is secured. Under this analysis, ninety-four percent of Chemical's claim is secured, while six percent is unsecured. Therefore, ninety-four percent of the arrearage portion of the claim would be considered to be secured, and would be entitled to interest under § 1325(a)(5)(B).

---

10. The Supreme Court decision in *Nobelman* only overruled one aspect of the Third Circuit decisions in *Wilson v. Commonwealth Mtge. Corp.,* 895 F.2d 123 (3d Cir.1990) and *Sapos v. Provident Inst. of Sav.,* 967 F.2d 918 (3d Cir. 1992); thus, these cases still have qualified precedential value. *See In re Hammond,* 27 F.3d 52 (3d Cir.1994).

11. We presume, although we do not know, that the amount of principal that is due at the time of the filing of the complaint does not include the amount of principal that will be paid as part of the arrearage component of the claim.

In his treatise on Chapter 13 bankruptcy, Judge Keith Lundin opines that it is "likely that courts will allocate arrearages to the secured portion of the undersecured claim". 1 KEITH M. LUNDIN, *Chapter 13 Bankruptcy* § 4.55 at 4–113 (2d ed. 1994). Recently, in *In re Jones,* 168 B.R. 146 (Bankr. E.D.Tx.1994), it was determined that arrearages should be allocated to the secured portion of a mortgagee's undersecured claim.[12] The *Jones* court reasoned that such a result is consistent with congressional intent to protect home mortgage lenders, is consistent with pre-*Nobelman* practices, and balances a debtor's right to cure default against a mortgagee's entitlement to receive interest for the delay in the payment of arrearages.

In the context of a pre-*Nobelman* discussion on allocation of arrearages for § 1322(b)(2) purposes, the Third Circuit rejected the allocation of arrearages to the allowed secured claim portion of an undersecured claim. *Sapos v. Provident Ins. of Savings,* 967 F.2d 918, 927 (3d Cir.1992). In *Sapos,* the home mortgage lender filed a proof of claim in the amount of $44,989.53. Pre-petition arrearages amounted to $11,-188.12. The value of the property securing the claim was stipulated to be $17,000. The debtor's Chapter 13 plan proposed to satisfy the home mortgage lender's allowed secured claim in the amount of $17,000 through the plan, with interest. All of the pre-petition arrearages were included in the amount to be paid. The approval of debtor's plan by the bankruptcy court and the district court was reversed by the Circuit. The Circuit concentrated on the issue of "whether the admixture of payment of arrearages and payment of the balance due on mortgage principal accords with section 1322(b)(5)". *Id.* at 926. The court held that the plan as proposed could not be approved because it failed to distinguish between payments to cure and payments to maintain regular monthly payments under the plan. As well, the court determined that arrearages could not be "crammed down" under section 506(a), but must be liquidated in full through the plan, as required under § 1322(b)(5).

The manner of allocation of arrearages proposed by *Sapos* as between the secured and unsecured portions of a claim is unclear. In *Sapos,* the amount of principal due on the obligation, without arrearages, was greater than the value of the collateral. In its summation, the court seems to suggest that consideration of allocation begins with the amount of principal due to the secured creditor, as noted in the following statement:

> [A] debtor who bifurcates an allowed claim under section 506(a) can use the cure and maintenance provisions of section 1322(b)(5) only if the debtor both pays arrearages within a reasonable time and continues to make the monthly payments due in accordance with the original terms of the note until the principal has been paid in an amount equal to the value of the property established under section 506(a).

*Id.* at 928. This comment suggests that the secured portion of the claim, representing the value of the property of $17,000, consists entirely of principal due, while arrearage payments, which must be liquidated in full through the plan under the curing provisions of § 1322(b)(5), are allocated to the unsecured portion of the creditor's claim.

However, we do not believe that such an allocation is mandated by *Sapos.* The *Sapos* court was not focusing upon the allocation question in the context of defining an "allowed secured claim" for § 1325(a)(5) purposes. *See Id.* 928, n. 1. Rather, the focus of the court was upon the § 1322(b)(5) requirement that in the event of a default on a long term mortgage, and where the Chapter 13 plan proposes to cure the default and reinstate the mortgage and note, the entire arrearage amount due must be paid through the plan. The remainder of the obligation would be satisfied by regular monthly payments in accordance with the original terms of the note. *Sapos* rejected the proposed allocation of arrearages to the secured portion of the claim, and also recognized the problem of allocating all arrearages to the unsecured portion of a secured creditor's

12. See also several pre-*Nobelman* decisions on the subject of the allocation of arrearages in connection with claim-splitting under § 1322(b)(2), including *In re Terranova,* 152 B.R. 20, 22–23 (Bankr.D.Ct.1993); *In re Richards,* 151 B.R. 8, 18 (Bankr.D.Mass.1993), and *In re Session,* 128 B.R. 147, 152 (Bankr.E.D.Tex.1991).

claim. Since § 1322(b)(5) requires payment of the arrearages in full to cure a default and to reinstate the mortgage, treating the arrearages as an unsecured claim, with the resulting prospect of less than full payment, contradicted the statute and was not permitted. The difficulties involved in allocating arrearages as between the secured and unsecured portions of a claim were highlighted by the *Sapos* court as follows:

The potential inequity may be greater if the arrearages are allocated to unsecured debt, but the inequity does not disappear if the arrearages are allocated to secured debt.

*Id.* at 928.

 The most conceptually satisfying solution to the dilemma of arrearage allocation is the third of the alternatives we noted above, whereby we calculate the percentage of the entire claim that is secured and apply that percentage to the arrearage claim to arrive at the amount of the allowed secured arrearage claim on which post-confirmation interest should be paid under § 1325(a)(5)(B)(ii). No other alternative is consistent with the basic premise that the home mortgage lender holds a single claim, comprised of outstanding principal, to be paid in regular monthly installments as provided for in the contract, and arrearages and other charges, to be paid through the plan. The entire claim must be bifurcated into a secured portion and an unsecured portion under § 506(a) to determine "allowed secured claim" status for § 1325(a)(5) treatment. If the value of the property, and, therefore, the extent of the allowed secured claim, is less then one hundred percent of the mortgage holder's claim, the extent to which the total claim is not an allowed secured claim applies to all components of the claim. The percentage allocation process offers a manner of allocation which recognizes the entirety of such a claim, and thereby effects the legislative mandate in section 1325(a)(5)(B) to afford present value to an allowed secured claim "provided for" by a Chapter 13 plan to the extent that such a claim constitutes an allowed secured claim under section 506(a).

In sum, we conclude the following:

1. Chemical, as an undersecured creditor, is not entitled to pre-confirmation interest under 11 U.S.C. § 506(b).

2. Chemical is entitled to post-confirmation interest pursuant to 11 U.S.C. §§ 506(a) and 1325(a)(5) to the extent that its arrearage claim constitutes an allowed secured claim.

3. No interest is required pursuant to section 1325(a)(5)(B)(ii) for the portion of Chemical's arrearage claim that is not an allowed secured claim.

4. The allocation of arrearages as between the secured and unsecured portions of Chemical's claim is determined by calculating the percentage of the entire claim, comprised of principal and arrearages, that is secured, and applying the percentage of the entire claim that is secured to the arrearage component of the claim.

Debtors' motion to reduce the claim of Chemical is granted, to the extent that interest charged on the unsecured portion of Chemical's arrearage claim shall be deducted from the claim. Debtor's counsel shall submit an order in conformance herewith.