

1994 Decisions

10-20-1994

# IN RE: Lillie Johns

Precedential or Non-Precedential:

Docket 94-1437

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1994

Recommended Citation
"IN RE: Lillie Johns" (1994). *1994 Decisions.* Paper 162.
http://digitalcommons.law.villanova.edu/thirdcircuit_1994/162

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1994 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
------------

No. 94-1437

------------

IN RE: LILLIE M. JOHNS

LILLIE M. JOHNS

v.

ROUSSEAU MORTGAGE CORPORATION;
COMMONWEALTH EASTERN MORTGAGE CORPORATION;
COMMONWEALTH MORTGAGE CORPORATION OF AMERICA;
DELAWARE COUNTY REGIONAL WATER CONTROL;
DELAWARE COUNTY REGIONAL WATER CONTROL AUTHORITY;
PENNSYLVANIA HOME REMODELING COMPANY;
REDEVELOPMENT AUTHORITY OF CHESTER;
DEPARTMENT OF PUBLIC WELFARE

Rousseau Mortgage Corporation,
Appellant
------------

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 93-06624)

------------

Submitted Under Third Circuit LAR 34.1(a)
Thursday, September 22, 1994

PANEL: BECKER, COWEN and GARTH, Circuit Judges

------------

(Opinion filed October 20, 1994)

------------

Lawrence T. Phelan
Peter C. Cilio
Federman & Phelan
Two Penn Center Plaza
Suite 900
Philadelphia, Pennsylvania 19102

Attorney for Appellant

Lawrence R. Rudderham
Kirifides & Rudderham
P.O. Box 723
Chester, Pennsylvania 19016

Attorney for Appellee

OPINION OF THE COURT

GARTH, Circuit Judge:

This appeal presents us with two issues.  First, whether a debtor in a chapter 13 bankruptcy may modify the rights of an undersecured mortgage lender under 11 U.S.C. § 1322(b)(2) and 11 U.S.C.§ 506(a) when the mortgage is secured by both real and personal property.  Second, whether a pre-petition foreclosure judgment precludes modification of the mortgagee's secured claim because the terms of the mortgage have "merged" into the foreclosure judgment.  The district court held that modification was appropriate and was not precluded by merger.  We affirm.

I.

Appellee Lillie M. Johns ("Ms. Johns") purchased a house in Chester, Pennsylvania on April 29, 1986, with the help of a loan secured by a mortgage that was later assigned to Rousseau Mortgage Corporation ("Rousseau").  The mortgage covered Ms. Johns' home as well as "any and all appliances, machinery, furniture and equipment (whether fixtures or not) of any nature

whatsoever now or hereafter installed in or upon said premises." Appellee's Appendix 31.

At some time prior to filing in bankruptcy, and following over a year's delinquency on the part of Ms. Johns, the Delaware County Court of Common Pleas entered a foreclosure judgment against Ms. Johns and in favor of Rousseau in the amount of $39,557.15.

It was stipulated in the bankruptcy court that the fair market value of Ms. Johns' residence was $8,000, and that the value of her appliances, machinery, furniture and equipment ("personalty") was $1,000.

On April 15, 1993, shortly before the planned foreclosure sale, Ms. Johns filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code. Thereafter, Ms. Johns instituted an adversary action in bankruptcy court against Rousseau to limit Rousseau's claim to the fair market value of the mortgaged premises. By Order of November 4, 1993, the bankruptcy court, pursuant to 11 U.S.C. § 506(a), bifurcated Rousseau's interest into a secured claim of $9,000 and an unsecured claim of $30,557.15, holding that the anti-modification provision of 11 U.S.C. §1322(b)(2) did not prohibit a modification of the debtor's indebtedness where the secured claim was secured by personalty as well as an interest in the debtor's principal residence. The bankruptcy court also rejected Rousseau's argument that the mortgage foreclosure judgment precluded reliance on the mortgage's "additional security" provisions because the mortgage had merged into the judgment.

Rousseau appealed to the district court, which, by Memorandum and Order dated March 17, 1994, affirmed the order of the bankruptcy court. This appeal followed.

Because this case was submitted on a stipulated record and presents issues of statutory interpretation and conclusions of law only, our standard of review is plenary. <u>Brown v. Pennsylvania State Employees Credit Union</u>, 851 F.2d 81, 84 (3d Cir. 1988).

## II.

Chapter 13 of the Bankruptcy Code permits debtors to structure repayment of their indebtedness through a plan approved by the bankruptcy court. Section 1322(b) lists ten provisions which Chapter 13 debtors may, at their option, include in their bankruptcy plans. Section 1322(b)(2) in particular provides that a debtor's plan may:

> modify the rights of holders of secured claims, <u>other than a claim secured only by a security interest in real property that is the debtor's principal residence</u>, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims.

(emphasis added). This provision thus allows modification of the rights of both secured and unsecured creditors, with the exception that the rights of creditors whose claims are secured <u>only</u> by a mortgage on the debtor's principal residence may not be modified.

Section 506(a) defines allowed[1] secured and allowed unsecured claims as follows:

> An allowed secured claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim.

Section 506(a) thus "provides that a claim is secured only to the extent of the value of the property on which the lien is fixed." United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 239, 109 S.Ct. 1026, 1029 (1989). Any surplus is, by definition, unsecured.

We have recently held in In re Hammond, 27 F.3d 52 (3d Cir. 1994) that the Bankruptcy Code did not preclude bifurcation of a secured interest in a personal residence when personalty also secured the debtor's loan. In so holding we have re-affirmed the continuing vitality of a prior holding of this Court reached in Wilson v. Commonwealth Mortg. Corp., 895 F.2d 123 (3d Cir. 1990).

In Wilson we held that the anti-modification provision of § 1322(b)(2) does not prohibit modification of the unsecured portion of an undersecured mortgage on the debtor's principal residence. This holding was overturned by the Supreme Court in Nobelman v. American Sav. Bank, __ U.S. __, 113 S.Ct. 2106

---

[1]. An "allowed" claim is one that will serve as the basis for distribution. 11 U.S.C. § 502(a).

(1993).  However, our decision in Wilson in favor of the mortgagor-debtor was also based on a second and alternative ground.  Having noted that the mortgage agreement in question covered not only real estate but personalty as well, we concluded that:

> [T]he anti-modification provision of section 1322 does not bar the bankruptcy court's order [limiting the creditor's allowed secured claim to the fair market value of the principal residence] because the creditor's interest was not secured only by real property as required by the statute.  By its express terms, § 1322 prohibits modification of a creditor's rights only when the creditor's claim is "secured only by a security interest in real property that is the creditor's principal residence."

Wilson, 895 F.2d at 128; see also Sapos v. Provident Inst. of Sav. in Town of Boston, 967 F.2d 918 (3d Cir. 1992).  Nobelman did not address, and hence did not disturb, this alternative ground of decision.

Thus, in Hammond we reasserted and upheld the principle that bifurcation is available when a mortgage secures both the residence and personal property of the debtor.  The Hammonds had given Commonwealth a purchase money mortgage on their home and on "any and all appliances, machinery" etc. installed in their home. The security interest given in Hammond cannot be distinguished from the security interest given by Ms. Johns to Rousseau. Hence, the present case is in all relevant respects indistinguishable from, and therefore controlled by, Hammond. See Internal Operating Procedure 9.1.[2]  Indeed, Rousseau's

---

[2].        I.O.P. 9.1 states that:

supplemental brief, filed shortly after our decision in Hammond was handed down, at least implicitly acknowledged that Hammond governs our decision here by focusing almost exclusively on reasons why Hammond should be overruled as inconsistent with Nobelman.

### III.

Rousseau also contends that because the mortgage has been foreclosed, the terms of the mortgage "merge" into the foreclosure judgment of the Delaware County Court of Common Pleas and thereby cease to exist, leaving Rousseau with a security interest which does not include Ms. Johns' personalty. Accordingly, Rousseau argues that Nobelman precludes bifurcation of the remaining security interest – that is the residence – into secured and unsecured interests.[3]

Rousseau notes that in In re Stendardo, 991 F.2d 1089 (3d Cir. 1993) we held that where a foreclosure judgment had been entered on a mortgage containing no specific language preserving a debtor's obligation to pay taxes and insurance premiums beyond the date of the judgment, the mortgagee could not rely on the terms of the mortgage for recoupment of advances made for taxes

(..continued)
> It is the tradition of this court that the holding of a panel in a reported opinion is binding on subsequent panels.  No subsequent panel overrules a holding in a published opinion of a previous panel.  Court in banc consideration is required to do so.

[3]. The same issue raised here was also raised in In re Hammond, 27 F.3d 52 (3d Cir. 1994).  We did not address it at that time, however, because the appellant had not argued the merger issue to the district court.

and insurance.  From this, Rousseau argues that all specific terms of the mortgage were merged into the judgment, leaving Rousseau with a security interest in Ms. Johns' residence alone because § 1322(b)(2) evinces Congress' intention to protect home mortgage lenders from cram-downs.

We are not attracted by this argument.  If Rousseau's rights under § 1322(b)(2) were to be determined solely because it was the holder of a judicial lien rather than the holder of a mortgage then it could not claim protection under the anti-modification provision because that provision "applies only to claims secured by a 'security interest' in the debtor's house. . .." First Nat. Fidelity Corp. v. Perry, 945 F.2d 61, 64 (3d Cir. 1991), and Perry, referring to the Code, defines a security interest "as a lien created by an agreement" 11 U.S.C. § 101(51).  It is clear that a judgment lien is not "created by agreement."

In Perry, however, we also held that a "security interest" within the meaning of § 1322(b)(2) continues to exist after a foreclosure judgment.  Thus in determining whether the protections of § 1322(b)(2) attach, we require that the security interest created by the parties be analyzed as we discussed above.  The security interest created by Ms. Johns' original mortgagee and then assigned to Rousseau included Ms. Johns' personal property as well as her principal residence.  In that circumstance, we have held in Hammond, supra, that modification of the security interest is not barred by the operation of § 1322(b)(2).

Moreover, Rousseau has not demonstrated why it should be favored over other secured creditors just by virtue of having reduced its claim to a foreclosure judgment. Rousseau has furnished us with no authority which would justify a holding that Rousseau was entitled to be placed in a superior position compared to other secured creditors simply because it has relinquished a security interest that was taken in the original transaction with Ms. Johns. The original contract with Ms. Johns, which specified that the mortgagee would be secured not only by a mortgage on her principal residence but also by a security interest in her personalty, fell within the exception found in § 1322(b)(2). Rousseau cannot now escape from that exception by relying on its status as the holder of a non-consensual judgment and thereby gain the protection that had originally been given up when a security interest in both real and personal property had been sought and taken. Nor can it obtain that protection by now foregoing part of the security, i.e. the personalty, which it originally required.

Our holding in Perry that a security interest continued to exist after a foreclosure judgment was based in large part on our concern that to hold otherwise would frustrate the clear intentions of Congress: "If modification of the lender's rights were permissible after it secured a foreclosed judgment, the [antimodification] assurance afforded by § 1322(b)(2) would be rendered largely illusory." Perry at 65. The same holds true of the exception to that section's antimodification protections.

Thus, although the foreclosure judgment terminated the mortgage, i.e. the contractual relationship between Ms. Johns and now Rousseau, see Matter of Roach, 824 F.2d 1370 (3d Cir. 1987), the security interest taken by Rousseau survives in toto and that interest must, as we have previously explained, include Rousseau's security interest in Ms. Johns' personalty.  This being so, § 1322(b)(2) operates to permit modification into secured and unsecured interests, as the bankruptcy and district court held.

IV.

Having held that § 1322(b)(2) does not bar modification of a mortgage which is secured by both real and personal property and having held that a pre-petition foreclosure judgment cannot bar modification of the mortgagee's secured claim by reason of "merger," we will affirm the March 17, 1994 judgment of the district court.