In re Steven E. JONES and Linda R. Jones, Debtors.

Bankruptcy No. 96–30052.

United States Bankruptcy Court, D. New Jersey.

Sept. 30, 1996.

As Corrected Oct. 21, 1996.

Robert C. Nisenson, Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, New Brunswick, NJ, for Creditor Wagner Carbide Saw, Inc.

Andrew P. Zacharda, Maciag & Associates, P.A., Sommerville, NJ, for Debtors.

## MEMORANDUM OPINION

STEPHEN A. STRIPP, Bankruptcy Judge.

This is the court's decision on a motion for relief from the automatic stay. The issues addressed herein are: (1) whether the anti-modification provision of Bankruptcy Code § 1322(b)(2) applies to a mortgage which secures no value in light of senior liens, and (2) whether a security interest in fixtures, condemnation awards and insurance proceeds prevents the application of the anti-modification provision. This court has jurisdiction over this matter pursuant to 28 U.S.C. § 157 and § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(G), (K), and (L). The following will constitute the court's findings of fact and conclusions of law.

## FINDINGS OF FACT

On January 3, 1996 Steven and Linda Jones (hereinafter "debtors") filed their petition for relief under chapter 13 of title 11, United States Code (hereinafter "Bankruptcy Code" or "Code"). Debtors' residence is encumbered by a first mortgage in favor of GE Capital in the amount of $139,519.59 and a second mortgage in favor of Wagner–Carbide Saw, Inc. (hereinafter "Wagner") in the amount of $75,797.18. Debtors obtained an

appraisal which valued their residence at $138,000.00. Wagner disputes debtors' appraisal, claiming that the value of the property is $150,000.00. However, because valuation will only be relevant if Wagner's claim is subject to modification, the court will assume debtors' appraisal is correct for the purposes of this opinion.

Debtors submitted their Chapter 13 plan on January 23, 1996. In their plan debtors provided for reinstatement of the first mortgage on their residence, and proposed to use § 506(a) of the Code to cram down the second mortgage to zero.[1]

Wagner filed an objection to the plan, claiming that the plan proposes an impermissible modification of its rights under Code § 1322(b)(2). Wagner then filed a motion for relief from the automatic stay in April 1996. Argument was heard on July 9, 1996 on the motion for relief from the stay and confirmation of debtors' plan. The court reserved judgment and requested briefs on the issues addressed herein.

At the hearing and in its brief Wagner argued that § 1322(b)(2) prohibited modification of its rights because it is the holder of a claim secured only by a security interest in the debtors' principal residence. Wagner further claimed that, since its rights are protected by § 1322(b)(2), it is entitled to post-petition mortgage payments. It requested relief from the automatic stay on the basis of debtors' failure to make such payments. Debtors argued that Code § 1322(b)(2)'s anti-modification provision is not applicable to the Wagner mortgage for two alternative reasons: (1) Wagner is not the holder of a secured claim because the value of debtors' residence is less than the outstanding balance on the first mortgage, and (2) Wagner's claim is also secured by collateral other than the debtors' principal residence. Debtors assert that because § 1322(b)(2)'s anti-modification provision is not applicable, they may modify Wagner's claim within the Chapter 13

plan and are not required to make post-petition mortgage payments.

Two issues will be addressed in this opinion. The first issue is whether the anti-modification provision of § 1322(b)(2) applies if Wagner's mortgage secures no value in light of GE Capital's first mortgage. The second issue is whether Wagner's mortgage is secured by collateral in addition to a security interest in real property that is the debtors' principal residence, which would also prohibit Wagner from taking advantage of the anti-modification provision.

## CONCLUSIONS OF LAW

### I. Introduction

The issues before the court concern the interaction of two sections of the Bankruptcy Code. Section 506(a) allows debtors to modify creditors' claims into secured and unsecured portions. 11 U.S.C. § 506(a). However, Code § 1322(b)(2) limits a debtor's ability to use § 506(a) to modify certain mortgages. Under § 1322(b)(2) a Chapter 13 plan may

> modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims.

*Id.* § 1322(b)(2). The "other than" provision has been dubbed the "anti-modification" provision because it prevents the modification of certain mortgages.

Wagner claims that the anti-modification provision prohibits modification of its rights, while debtors argue that § 1322(b)(2) is inapplicable to Wagner. Wagner is only entitled to post-petition payments as a secured creditor if it falls under the anti-modification provision of Code § 1322(b)(2). If either of debtors' arguments excludes Wagner from the anti-modification provision, Wagner is

---

1. "Cram down" is a term of art in bankruptcy cases. In Chapter 11 cases, it refers to confirmation of a plan under Code Section 1129(b) over the dissent of one or more impaired classes. In Chapter 13 cases, it refers to elimination of the unsecured portion of a lien under Code sections 506(a), 1322(b)(2), and

1325(a)(5). Thus, "cram down to zero" means elimination of the lien on the grounds that in light of the value of the property, the lien is worthless.
*Lee Servicing Co. v. Wolf (In re Wolf)*, 162 B.R. 98, 103 n. 4 (Bankr.D.N.J.1993).

not entitled to post-petition payments and its motion must be denied.

## II. Applicability of Bankruptcy Code § 1322(b)(2) to an Unsecured Mortgage

The first issue concerns whether § 1322(b)(2)'s anti-modification provision is applicable to an entirely unsecured creditor like Wagner. Although other bankruptcy courts have addressed this issue, this is a question of first impression in this district.

Debtors interpret *Nobelman v. American Sav. Bank,* 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993), as requiring a mortgagee to be secured by at least some value in the debtor's property, as defined in § 506(a), for § 1322(b)(2)'s anti-modification provision to apply. Debtors claim that because the amount owed under the first mortgage exceeds the value of the property, Wagner's mortgage is entirely unsecured and can be crammed down to zero. Wagner argues that, under *Nobelman,* the value of its claim is irrelevant because the simple existence of its mortgage contract makes it the holder of a claim secured only by a security interest in real property that is the debtors' principal residence.

The court agrees that *Nobelman* provides the applicable law. In *Nobelman,* the Supreme Court addressed the question of whether "§ 1322(b)(2) prohibits a Chapter 13 debtor from relying on § 506(a) to reduce an undersecured homestead mortgage to the fair market value of the mortgaged residence." *Id.* at 325–26, 113 S.Ct. at 2108. The Court held that reduction of the mortgage constituted a modification of the creditor's rights and, therefore, was prohibited by § 1322(b)(2). *Id.* at 332, 113 S.Ct. at 2111–12.

Debtors attempt to distinguish *Nobelman* by claiming that, while § 506(a) cannot be used to reduce an *under*secured mortgage, it can be used to reduce an *un*secured mortgage. Debtors argue that *Nobelman* requires Wagner's claim to be secured by at least some value in their residence for the anti-modification provision to apply. Debtors claim that because there is no value in their property above the first mortgage, Wagner's claim is entirely unsecured and therefore subject to modification.

Following the current trend in decisions addressing this issue, debtors focus on the Supreme Court's statement that,

> [p]etitioners were correct in looking to § 506(a) for a judicial valuation of the collateral to determine the status of the bank's secured claim.... But even if we accept petitioners' valuation, the bank is still the "holder" of a "secured claim."

*Id.* at 328–29, 113 S.Ct. at 2110. Debtors ask the court to follow other bankruptcy decisions that have interpreted this language to allow a wholly unsecured mortgagor's claim to be modified. *See, e.g., Sette v. Bello (In re Sette),* 164 B.R. 453, 455–56 (Bankr.E.D.N.Y. 1994); *In re Plouffe,* 157 B.R. 198, 200 (Bankr.D.Conn.1993); *In re Castellanos,* 178 B.R. 393, 395 (Bankr.M.D.Pa.1994). The court declines to follow those decisions. The court believes that these courts failed to consider the quoted language from *Nobelman* properly in the context of the rest of the decision and have made the same error that the *Nobelman* Court was attempting to correct.

In *Nobelman,* the debtor argued that because the anti-modification provision followed the term "secured claim," it modified that term. *Id.* at 330, 113 S.Ct. at 2110–11. The Supreme Court noted that if it accepted this interpretation, a creditor would have to be fully secured to fall under the anti-modification provision. *Id.* The debtors in the instant case make a similar argument claiming that a mortgage must be a fully or partially "secured claim" under § 506(a) for the anti-modification provision to apply. Debtors fail to note, however, that the *Nobelman* Court expressly rejected the assertion that the anti-modification provision modified "secured claim," stating that "§ 1322(b)(2) cannot operate in combination with § 506(a) in the manner theorized by petitioners." *Id.* at 332, 113 S.Ct. at 2111. The Court rejected this "rule of the last antecedent" stating that Congress chose to use the word "claim" instead of repeating the term "secured claim" in the anti-modification provision. *Id.* at 331, 113 S.Ct. at 2111. The Court stated that because the Code defines "claim" as both a

secured and an unsecured right to payment, Congress did not intend to require the mortgagee to be fully secured for the anti-modification provision to apply. *Id.*

Furthermore, at the outset of its opinion, the Court clearly states that "[b]y virtue of its mortgage contract with petitioners, the bank is indisputably the holder of a claim secured by a lien on petitioner's home." *Id.* at 328, 113 S.Ct. at 2110. The Court did not look to § 506(a) to determine whether the creditor was a "secured creditor," but looked solely to the existence of the mortgage to determine whether the creditor fell under the anti-modification provision. *Id.* This language indicates that it is the existence of a mortgage lien which determines the application of § 1322(b)(2), and not the value of the collateral subject to that lien. *See id.*

The *Nobelman* Court stressed that § 1322(b)(2) does not focus on modification of claims but on modification of *"rights of holders"* of claims (emphasis in original). *Id.* The Court stated that the determination of the value of the collateral under § 506(a) "does not necessarily mean that the 'rights' the bank enjoys as a mortgagee, which are protected by § 1322(b)(2), are limited by the valuation of its secured claim." *Id.* at 329, 113 S.Ct. at 2110. The Court emphasized that "the right to repayment of the principal in monthly installments over a fixed term at specified adjustable rates of interest" is one of the rights that was " 'bargained for by the mortgagor and the mortgagee' " and is protected from modification by § 1322(b)(2). *Id.* at 329–30, 113 S.Ct. at 2110–11 (quoting *Dewsnup v. Timm,* 502 U.S. 410, 417, 112 S.Ct. 773, 778, 116 L.Ed.2d 903 (1992)). This language further supports the conclusion that because a cram down of Wagner's claim would be a modification of its "rights" such a reduction is prohibited by § 1322(b)(2). *See id.* at 329, 113 S.Ct. at 2110.

Consideration of practical consequences provides an additional basis for the court's decision. If the court adopted debtors' interpretation of *Nobelman,* a creditor's right to prevent modification of its mortgage could hinge on merely one dollar of value. For example, under debtors' interpretation, a second mortgagee would be able to collect the full value of its claim if the debtor owed $99,999.00 under its first mortgage, and its residence was valued at $100,000.00. That single dollar of value securing the second mortgagee's claim would allow full collection. On the other hand, if the residence were valued at $99,998.00, there would be no value to secure the second mortgagee's claim, and it could be modified and treated as totally unsecured. The court believes that the *Nobelman* Court was concerned with protecting the rights of mortgagees and did not intend such an arbitrary distinction to result from its decision. Furthermore, the court is concerned that such a distinction could encourage debtors to avoid paying "prior mortgages or other charges which can become a lien on their residence until such time as these nonpayments result in negative equity for a [second mortgage]." *In re Neverla,* 194 B.R. 547, 551 (Bankr.W.D.N.Y.1996).

As a result, because Wagner possesses a security interest in the debtors' property via its mortgage contract, modification of that mortgage would constitute a modification of the rights of a holder of a claim secured by a security interest in the debtors' principal residence. Therefore, Wagner is protected by § 1322(b)(2), and its claim cannot be modified in the Chapter 13 plan *unless* its claim is also secured by property other than the debtors' principal residence. If such other collateral exists, then the anti-modification provision by its express terms does not apply for the reasons set forth below.

### III. Collateral Other Than Real Property That is the Debtors' Principal Residence

The second issue before the court is whether Wagner's mortgage is secured by collateral other than real property that is the debtors' principal residence. The protection of § 1322(b)(2)'s anti-modification provision is only available to mortgagees who are secured *"only* by a security interest in real property that is the debtor's principal residence...." 11 U.S.C. § 1322(b)(2) (emphasis added). The language of the mortgage document at issue defines the mortgaged property as:

> (a) the land; (b) all buildings that are now, or will be, located on the land; (c) all fixtures that are now or will be attached to

the land or building(s) (for example, furnaces, bathroom fixtures, and kitchen cabinets); (d) all condemnation awards and insurance proceeds relating to the land and building(s); and (e) all other rights that I have or will have, as owner of the Property.

The parties disagree as to whether this language creates a security interest in property other than real estate that is the debtors' principal residence.

Debtors assert that Wagner's security interest in "all fixtures" and "all condemnation awards or insurance proceeds" constitutes additional collateral and prevents the application of § 1322(b)(2)'s anti-modification provision. Wagner does not discuss the condemnation awards and insurance proceeds in its brief but argues that the anti-modification provision is applicable "because the mortgage in this matter does not create a security interest in rents, profits, issues, fixtures and an escrow account of the Debtor." (Memorandum of Law in Support of Motion for Relief from the Automatic Stay at 3, No. 96–30052).

Wagner relies on *In re Eastwood,* 192 B.R. 96 (Bankr.D.N.J.1996), to support its claim that its mortgage agreement created no additional collateral other than a security interest in real estate that is the debtors' principal residence. *In re Eastwood,* however, is inapplicable to the current situation. The mortgage in *Eastwood* only repeated the items which are included in a fee simple estate under New Jersey statutory law. *Id.* at 98–99. Interests in fixtures, condemnation, awards and insurance proceeds are not included within the statutory definition of a fee simple estate. *See* N.J. Stat. Ann. 46:3–16 (West 1989). Therefore, Wagner's mortgage does not merely restate the statutory definition of a fee simple estate as the *Eastwood* mortgage did, but lists additional items as collateral.

■ It is well settled in the Third Circuit that "a mortgagee who has an additional security interest in property other than the real estate which is the mortgagors' primary residence cannot claim any benefit from section 1322(b)(2)'s anti-modification provision...." *Hammond v. Commonwealth*

*Mortgage Corp. (In re Hammond),* 27 F.3d 52, 56 (3d Cir.1994); *see also Sapos v. Provident Inst. of Sav.,* 967 F.2d 918, 925–26 (3d Cir.1992); *Wilson v. Commonwealth Mortgage Corp.,* 895 F.2d 123, 128–29 (3d Cir. 1990).

*Johns, Hammond* and *Wilson* all concern mortgages that created security interests in "any and all appliances, machinery, furniture and equipment (whether fixtures or not) of any nature whatsoever now or hereafter installed in or upon said premises...." *Johns v. Rousseau Mortgage Corp. (In re Johns),* 37 F.3d 1021, 1023 (3d Cir.1994); *Hammond,* 27 F.3d at 53–54; *Wilson,* 895 F.2d at 128; *see also Sapos,* 967 F.2d at 922, 925 (holding mortgage secured by appliances, wall to wall carpeting, rents, and profits excluded mortgage from the anti-modification provision of § 1322(b)(2)). These cases strictly interpreted the anti-modification provision holding that such language created a security interest in collateral in addition to the debtors' principal residence and, therefore, prohibited application of the anti-modification provision. *See Johns,* 37 F.3d at 1023, 1025; *Hammond,* 27 F.3d at 53–54; *Wilson,* 895 F.2d at 128. Furthermore, in *Hammond* and *Wilson,* the Third Circuit specifically rejected the creditor's contention that its security interest in fixtures did not prevent it from taking advantage of the anti-modification provision. *See Hammond,* 27 F.3d at 57–58; *Wilson,* 895 F.2d at 129. Finally, in *In re Pinto,* this court held that a mortgage that includes a lien upon:

> [a]ll improvements now or hereafter erected on the property, and all easements, rights, appurtenances, rents, royalties, mineral, oil, and gas rights and profits, water rights ... stock and all *fixtures* now or hereafter a part of the property (emphasis added)

created a security interest in collateral in addition to the debtor's principal residence and prevented application of the anti-modification provision. *In re Pinto,* 191 B.R. 610, 612–14 (Bankr.D.N.J.1996).

■ Because the Third Circuit cases clearly show that a security interest in fixtures is considered collateral in addition to the debt-

ors' principal residence, Wagner's security interest in fixtures makes § 1322(b)(2)'s anti-modification provision inapplicable. Also, although the status of condemnation awards and insurance proceeds has not been specifically addressed in this district, the similarity of condemnation awards and insurance proceeds to the "rents," "rights," "profits," and "escrow accounts" that have been held to be additional collateral combined with the strict interpretation of the anti-modification provision in the Third Circuit compels this court to find that the security interest in "condemnation awards and insurance proceeds" is also additional collateral. *See Johns,* 37 F.3d at 1023; *Hammond,* 27 F.3d at 53–54; *Wilson,* 895 F.2d at 128; *Pinto,* 191 B.R. at 611. As a result, § 1322(b)(2)'s anti-modification provision is inapplicable to Wagner's mortgage, and its claim, therefore, is subject to modification under § 506(a). *See Johns,* 37 F.3d at 1023; *Hammond,* 27 F.3d at 53–54; *Wilson,* 895 F.2d at 128; *In re Pinto,* 191 B.R. at 612, 614.

### IV. Conclusion

Although Code § 1322(b)(2)'s anti-modification provision prohibits the modification of the rights of wholly unsecured mortgage holders if there is no additional collateral, this provision is inapplicable to Wagner because Wagner holds a security interest in fixtures, condemnation awards and insurance proceeds in addition to the mortgage lien on the residence. Because § 1322(b)(2)'s anti-modification provision is inapplicable Wagner's claim can be bifurcated under § 506(a) into secured and unsecured portions. Because Wagner's motion was based on debtors' failure to make post-petition mortgage payments to Wagner as holder of a secured claim, and it has not yet been determined whether Wagner holds a secured claim, its *motion is denied without prejudice to its* renewal depending upon the outcome of the confirmation hearing which shall include a valuation of the debtors' residence.

The attorney for the debtors shall submit an order within ten days under D.N.J.Bankr. Ct.R. 4(c), and shall arrange a phone conference with the trustee, the attorney for Wagner and the court to schedule the confirmation hearing.