In re John A. SCHEUER, Denise A. Scheuer, Debtors.

John A. SCHEUER, Denise A. Scheuer, Plaintiffs,

v.

MARINE MIDLAND BANK, N.A., Defendant.

Bankruptcy No. 96–60435.
Adversary No. 96–70241.

United States Bankruptcy Court,
N.D. New York.

Feb. 11, 1997.

Harter, Secrest & Emery, Syracuse, NY (Debra Su Dock, of counsel), for Marine Midland Bank, N.A.

Wayne R. Bodow, Syracuse, NY, for Debtors.

## MEMORANDUM-DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Chief Judge.

Presently before the Court is a motion for summary judgment filed by Marine Midland Bank ("Marine") on November 27, 1996, in the adversary proceeding commenced by John A. and Denise A. Scheuer ("Debtors") by the filing of a complaint ("Complaint") on September 9, 1996. Debtors' counsel filed an affidavit on December 11, 1996, opposing the motion and requesting summary judgment in favor of the Debtors, which the Court will treat as a cross-motion for purposes of this Decision.

The Court heard oral argument at its regular motion term in Utica, New York, on December 17, 1996 ("Hearing"). Since both parties had filed memoranda of law in support of their respective positions prior to the oral argument, the Court indicated that it would not require any further briefs, and the matter was submitted for decision on that date.

### JURISDICTIONAL STATEMENT

The Court has jurisdiction over the parties and subject matter of this adversary proceeding pursuant to 28 U.S.C. §§ 1334(b), 157(a), (b)(1), (b)(2)(K) and (O).

### FACTS

Debtors filed a voluntary petition ("Petition") pursuant to Chapter 13 of the Bankruptcy Code (11 U.S.C. §§ 101–1330) ("Code") on February 5, 1996. On their Petition Debtors listed their address as 102 Baum Avenue, North Syracuse, New York ("Residence"). Marine is listed in the Debtors' Schedules as holding a second mortgage on the Residence which secures a home equity line of credit in the amount of $18,275. Debtors listed the value of their Residence as $70,500 and the value of the real property subject to Marine's mortgage lien is listed as "0.00". *See* Schedule D of Debtors' Schedules.[1] According to its proof of claim, filed April 24, 1996, Marine asserts that it holds a secured claim in the amount of $18,156.08 with interest at 12.40% per year from January 20, 1995. Norwest Mortgage, Inc. ("Norwest") is listed as holding a first mortgage on the Debtors' Residence in the amount of $70,647. The Order of Confirmation, signed September 6, 1996, provides that Norwest is to receive $2,768.40 on its arrearages through the Plan and $71,653.10 is to be paid by the Debtors outside the Plan. There is no provision in the Plan for the treatment of Marine's claim.[2]

Marine contends that it did not object to the Debtors' Plan as it assumed that it would be treated as a long term debt and paid outside the Plan. Indeed, counsel for the Debtors indicated at oral argument that the purpose of the adversary proceeding is to modify the Plan pursuant to Code § 1329 and to change the treatment of Marine's claim by seeking to discharge the mortgage and obtain a release of Marine's lien on the Residence. Debtors seek an Order of the Court fixing Marine's secured claim at "0.00" and also requests that the Bank's mortgage lien be "discharged." Marine makes the argument that irrespective of the value of the Residence, the Debtors may not modify its claim since it is the holder of a claim secured by a security interest in real property that is the Debtors' principal residence.[3]

---

1. In Schedule A, attached to their Petition, Debtors have indicated that the Residence had a value of $71,000.

2. According to the Chapter 13 Trustee's Findings and Summary of the § 341 Meeting held on April

1, 1996, Marine was to be paid "as totally unsecured."

3. Marine, in its Reply filed December 13, 1996, also makes the argument that even if the Court were to cancel its consensual mortgage lien on the Debtors' Residence, under Code § 1322(b)(5)

Counsel for Debtors contends that if, as Marine asserts, there are no material issues of fact, then Marine has admitted the factual allegations set forth in Debtors' Complaint, namely that there was no equity securing the second mortgage held by Marine at the time the loan was taken out and Debtors are entitled to summary judgment as a matter of law. However, it is Marine's position that it has not admitted certain allegations enumerated in the Complaint and, in fact, expressly denied a number of Debtors' allegations concerning the market value of the Residence and the extent of the Debtors' equity in its Answer, filed October 9, 1996.

## DISCUSSION

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *K. Bell & Assoc., Inc. v. Lloyd's Underwriters*, 97 F.3d 632, 636 (2d Cir.1996) (quoting Rule 56(c) of the Federal Rules of Civil Procedure ("Fed.R.Civ.P.")). In this case, Marine contends that there is no genuine issue of material fact that would prevent the Court from holding, pursuant to Code § 1322(b)(2), that as a matter of law, the Debtors are not entitled to modify Marine's rights as a holder of a claim secured only by a security interest in the Debtors' Residence.

Code § 1322(b)(2) provides that a Chapter 13 plan "may modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's residence, or of holders of unsecured claims ..." Code § 101(5)(A) defines "claim" as a "right to payment," whether secured or unsecured. Whether or not ones claim enjoys "secured" status is determined in accordance with Code § 506(a), which provides that

> [a]n allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the

extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim.

▇ In the adversary proceeding *sub judice* if the Court were to determine that the Residence is entirely encumbered by Norwest's first mortgage, then Marine's claim in the estate's interest could be no greater than "0". By statute Marine's claim would be completely unsecured. However, Marine argues that it is unnecessary for there to be any valuation of the Debtors' Residence to determine the extent of its security interest since the rights protected by Code § 1322(b)(2) are based on its status as a mortgagee. Marine's position, however, is not supported by the majority of bankruptcy courts that have addressed the issue. *See In re Sanders*, 202 B.R. 986 (Bankr.D.Neb. 1996); *In re Geyer*, 203 B.R. 726 (Bankr. S.D.Cal.1996); *In re Lee*, 177 B.R. 715 (Bankr.N.D.Ala.1995); *In re Thomas*, 177 B.R. 750 (Bankr.S.D.Ga.1995); *In re Castellanos*, 178 B.R. 393 (Bankr.M.D.Pa.1994); *In re Mitchell*, 177 B.R. 900 (Bankr.E.D.Mo. 1994); *In re Woodhouse*, 172 B.R. 1 (Bankr. D.R.I.1994); *In re Sette*, 164 B.R. 453 (Bankr.E.D.N.Y.1994); *In re Moncrief*, 163 B.R. 492 (Bankr.E.D.Ky.1993); *In re Williams*, 161 B.R. 27 (Bankr.E.D.Ky.1993); *In re Kidd*, 161 B.R. 769 (Bankr.E.D.N.C. 1993); *In re Lee*, 161 B.R. 271 (Bankr. W.D.Okla.1993); *In re Hornes*, 160 B.R. 709 (Bankr.D.Conn.1993); *In re Plouffe*, 157 B.R. 198 (Bankr.D.Conn.1993); *but see In re Jones*, 201 B.R. 371 (Bankr.D.N.J.1996); *In re Barnes*, 199 B.R. 256 (Bankr.W.D.N.Y. 1996); *In re Neverla*, 194 B.R. 547 (Bankr. W.D.N.Y.1996).

The fact that a majority of courts have taken a particular position on an issue certainly does not prevent this Court from aligning itself with the minority if an independent analysis so warrants. In this instance, however, the Court agrees with the majority that if a creditor's claim, secured only by a securi-

and § 1328(c)(1), its claim would still be excepted from the Debtors' discharge upon completion of the Chapter 13 plan. That argument, howev-

er, is not before the Court in the context of the motion and "cross-motion" for summary judgment and will not be addressed herein.

ty interest in real property that is the debtor's principal residence, is determined to be totally unsecured, the creditor is not entitled to the protection of Code § 1322(b)(2).

The Court's analysis of necessity begins with consideration of the U.S. Supreme Court's decision in *Nobelman v. American Sav. Bank*, 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993). In that case, the Supreme Court concluded that the rights bargained for by the mortgagor and the mortgagee are protected from modification by Code § 1322(b)(2), even though the mortgagee's claim was undersecured. *See id.*, 508 U.S. at 329, 113 S.Ct. at 2110. The majority of courts interpreting the *Nobelman* decision have determined that in order for a mortgagee to claim the protection of Code § 1322(b)(2), it must qualify under Code § 506(a) as a holder of a secured claim **to some extent**. *See Plouffe*, 157 B.R. at 200 (emphasis added). The courts that take issue with this interpretation of *Nobelman* argue that the *Nobelman* court "looked solely to the existence of the mortgage to determine whether the creditor fell under the antimodification provision." *Jones*, 201 B.R. at 374; *Neverla*, 194 B.R. at 551 (stating that "the most reasonable construction of Section 1322(b)(2) is the literal and functional interpretation which results in it protecting from modification in Chapter 13 cases all properly perfected Homestead Mortgages irrespective of the value of the debtor's residence").

Bankruptcy Judge Stephen A. Stripp in *Jones* points out that the Supreme Court in *Nobelman* "stated that the determination that a portion of the bank's claim included an unsecured component under § 506(a) 'does not necessarily mean that the 'rights' the bank enjoys as a mortgagee, which are protected by § 1322(b)(2), are limited by the valuation of its secured claim.'" *Jones*, 201 B.R. at 374, (quoting *Nobelman*, 508 U.S. at 329, 113 S.Ct. at 2110). Judge Stripp suggests that the majority of courts to address the issue failed to consider that it is the "rights" of a mortgagee that Code § 1322(b)(2) protects. *See id.* Indeed, the *Nobelman* court makes the statement that "the bank's contractual rights are contained in a unitary note that applies at once to the

bank's overall claim, including both the secured and unsecured components." *Nobelman*, 508 U.S. at 331, 113 S.Ct. at 2111. In *Nobelman* the Supreme Court emphasized the fact that the bank was a "holder" of a "secured claim" because the house retained a certain amount of value. *See Nobelman*, 508 U.S. at 329, 113 S.Ct. at 2110. The court expressed concerns that in the situation in which there exists a secured component to a creditor's claim that the debtor not be permitted to modify the terms of the unsecured portion as it would, of necessity, effect the terms of the secured portion as well. *See id.*, 508 U.S. at 331, 113 S.Ct. at 2111.

There is a distinction to be drawn between the facts confronting the *Nobelman* court and those addressed by the bankruptcy courts in the cases cited above. The latter cases concerned claims of mortgagees that were determined to be totally unsecured; whereas in *Nobelman* the mortgagee's claim was secured in part. Indeed, the statement from *Nobelman* relied on by Judge Stripp reads in its entirety as follows:

> The portion of the bank's claim that exceeds $23,500 is an 'unsecured claim componen[t]' under § 506(a) (citation omitted); however, that determination does not necessarily mean that the 'rights' the bank enjoys as a mortgagee, which are protected by § 1 322(b)(2), are limited by the valuation of its secured claim.

*Nobelman*, 508 U.S. at 329, 113 S.Ct. at 2110.

The minority, it appears, would have this Court ignore Code § 506(a) in applying Code § 1322(b)(2). Yet, the entire discussion of the *Nobelman* court focused on the interrelationship of the two sections. The court talks of giving "effect to § 506(a)'s valuation and bifurcation of secured claims through a Chapter 13 plan." *Id.* There would be no need for a judicial valuation of the collateral if a creditor had only to rely on "a piece of paper purporting to give a creditor rights in specified collateral." *Hornes*, 160 B.R. at 715. Instead, there must be a preliminary determination of valuation under Code § 506(a). *See Sette*, 164 B.R. at 455. Code § 1322(b)(2) requires such an analysis; otherwise, Code § 1322(b)(2) should have been written to provide that a Chapter 13 plan

may "modify the rights of holders of secured or unsecured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence ..." *See generally Hornes,* 160 B.R. at 719 (stating that had Congress intended to make the "anti-modification clause" an exception to the general rule that unsecured claims are subject to modification, "it would have placed that clause *after* both the secured claims clause and the unsecured claims clause."). Instead, the placement of the "anti-modification clause" after reference to the "rights of holders of secured claims" supports the conclusion that there must first be a determination under Code § 506(a) that a creditor is at least partially secured in order to take advantage of the protections afforded by Code § 1322(b)(2). *See Thomas,* 177 B.R. at 753. It is only if it is determined that the creditor has a secured claim that the rights protected under Code § 1322(b)(2) then extend to any unsecured portion of its claim as well.

■ In the view of this Court, there must first be a valuation of the Residence to determine whether Marine has a secured claim. As pointed out in *Castellanos,* "[E]ven though a mortgage contract makes a creditor a holder of a claim 'secured by a lien', that creditor is a 'holder of a secured claim' only because the residence retained some value as collateral." *Castellanos,* 178 B.R. at 395. The Court acknowledges that such a conclusion places a creditor in a somewhat tenuous position, subject to "insignificant fluctuations of estimated value" which may result in a debtor being able to modify the creditor's claim. *See Barnes,* 199 B.R. at 257. On the other hand, if Marine is determined to be secured to the extent of only one dollar, then the Debtors would not be permitted to modify its claim. In other words, a single dollar of value would allow Marine full recovery on its claim. However ludicrous this result may appear, it is not for this Court to remedy the situation; rather, it is the province of Congress to amend the Code if it deems it appropriate.

■ Based on the above analysis, the Court must deny Marine's motion for summary judgment since there exists an issue of the value of the Residence. Counsel for Debtors has suggested that summary judgment be granted in favor of the Debtors based on Marine's assertion that there are no issues of material fact concerning the extent of Debtors' equity in the Residence securing the second mortgage at the time the loan was made to the Debtors.

■ In seeking summary judgment, Marine has taken the position that the value of the Residence and the existence, or lack thereof, of equity was not a material fact and, therefore, need not be considered by the Court in connection with Code § 1322(b)(2). Marine was not conceding that there was no issue concerning the valuation of the Residence. Indeed, in its Answer it clearly denies the Debtors' allegations in this regard. Furthermore, whether or not there was any equity in the Residence at the time the loan was made is irrelevant to the Court's determination of value as of the commencement of the case for purposes of determining whether Marine holds a secured claim pursuant to Code § 506(a). Accordingly, there is likewise no basis for granting the summary judgment to the Debtors.

Based on the foregoing, it is hereby

ORDERED that Marine's motion requesting summary judgment is denied;

ORDERED that Debtors' cross-motion seeking summary judgment is denied; and it is further

ORDERED that the trial of the adversary proceeding, which was originally scheduled for January 15, 1997, and adjourned, is rescheduled for March 24, 1997, at 2:00 p.m. at U.S. Bankruptcy Court, Room 236, U.S. Courthouse, 10 Broad Street, Utica, New York 13501.