**In re Rafael MENDEZ and Amalfi Mendez, Debtors.**

**Bankruptcy No. 99–62844(SAS).**

United States Bankruptcy Court,
D. New Jersey.

Nov. 8, 2000.

Marie–Ann Greenberg, Fein, Such, Kahn & Shepard, Parsippany, NJ, for Citicorp Mortgage, Inc.

Jacqueline R. Rocci, Metuchen, NJ, for debtors.

Robert M. Wood, Manasquan, NJ, Chapter 13 Trustee.

### MEMORANDUM OPINION

STEPHEN A. STRIPP, Bankruptcy Judge.

This is the court's decision on the debtors' motion to cram down a secured claim in a chapter 13 case and the creditor's objection. This court has jurisdiction pursuant to 28 U.S.C. §§ 1334, 151 and 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(B), (K) and (L). The following will constitute the court's findings of fact and conclusions of law.

### FINDING OF FACT

Rafael Mendez and Amalfi Mendez ("debtors") purchased a residence at 33 Essex Street, Carteret, New Jersey for $125,000.00 on September 9, 1998. On the same day, they gave a purchase money mortgage on the property to Citicorp Mortgage, Inc. ("Citicorp") for $100,000. Citicorp assigned the mortgage to Security Pacific National Trust Co. ("SPNT") as trustee on September 10, 1991 but remains the servicing agent to SPNT. The debtors

defaulted, and Citicorp filed a complaint in foreclosure against the debtors on November 4, 1998. On December 28, 1998, the debtors filed their first bankruptcy petition under chapter 7 of title 11, United States Code (the Bankruptcy Code). That case was closed in July 1999 at which time Citicorp resumed its foreclosure action.

On November 16, 1999, the debtors filed a petition for relief under chapter 13 of the Bankruptcy Code. On May 1, 2000, the debtors filed a motion to reduce Citicorp's secured claim to the value of the collateral, and to deny postpetition interest or reduce the interest rate. Citicorp filed an objection to the motion and a supplemental objection to confirmation. On June 21, 2000, a hearing took place on this motion and on a motion Citicorp filed for relief from the automatic stay based on the debtors' failure to make postpetition payments. At that hearing the court instructed the debtors' attorney to file and serve an appraisal of the debtors' residence. Citicorp's counsel was instructed to provide debtors' counsel with evidence of the current interest rate Citicorp charges for new home loans. On July 14, 2000, the debtors' attorney transmitted to Citicorp's attorney an appraisal from a real estate agent dated November 16, 1999. According to this appraisal, the debtors' residence has a value of $90,000. The debtors scheduled the value of the property at $93,000, and they submit that that is the property's value. The court adjourned the hearing from June 21, 2000 in part to enable Citicorp to submit its own evidence of value. Citicorp has elected to rely on the debtors' valuation of the property at $115,000 in their prior bankruptcy case and the chapter 7 trustee's adoption of that value in that case.

In connection with Citicorp's motion, the court signed an order on July 10, 2000 directing the debtors to make their regular July 1, 2000 postpetition payment and subsequent payments. If the debtors were to default for more then thirty days, the court would vacate the stay. In addition, the court stated that it would reschedule the confirmation hearing after ruling on whether the debtors could cram down the mortgage.

The debtors' argument is that the antimodification clause in Bankruptcy Code section 1322(b)(2) does not apply to Citicorp's secured claim because the claim is undersecured and the mortgage grants Citicorp security interests in property in addition to the residence. The debtors therefore seek bifurcation of Citicorp's claim of $115,684 into secured and unsecured parts, which results in reduction of the secured claim to the value of the collateral. The debtors also seek a reduction of the interest rate on the principal from 11% to 8%, and elimination of postpetition interest on Citicorp's prepetition claim for arrearages.

Citicorp argues that the debtors' motion should be denied because the antimodification clause in Code section 1322(b)(2) applies to the instant case; thus, cram down is inappropriate. Citicorp contends that the property the debtors designate as additional collateral is part of the real property under New Jersey law. If the court rules that cram down is permissible, Citicorp contends the value of the residence is $115,684, making Citicorp fully secured. Thus, the court may not allow the debtors to bifurcate and reduce Citicorp's secured claim for that alternative reason. As to reduction of the interest rate, Citicorp advances two arguments. First, the mortgage provides for Citicorp to collect interest on fees and costs connected with collecting any account deficiencies. Alternatively, even absent this provision, there is no legal distinction between an oversecured and an undersecured mortgage for the purpose of establishing the interest rate.

## CONCLUSIONS OF LAW

### I.

The first issue to be determined is whether Citicorp's claim is secured by any

collateral other than its mortgage on the residence. Bankruptcy Code section 1322(b)(2) provides that a chapter 13 plan may

> modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence . . .;

The "other than" provision in Code section 1322(b)(2) is referred to as the antimodification clause. *See In re McDonald,* 205 F.3d 606, 609 (3d Cir.2000). The antimodification clause prevents a debtor from modifying the rights of a creditor who has a claim secured only by the debtor's principal residence. *Id.* The court must therefore determine whether Citicorp has a lien on any property other than the debtors' residence. In *Nobelman v. American Savings Bank,* 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993), the Supreme Court held that where a mortgagee's only collateral is the debtor's residence, the antimodification clause prevents bifurcation under Code section 506(a) of an undersecured mortgagee's claim into a secured and an unsecured claim. Such bifurcation is more commonly referred to as "cramdown." *In re Jones,* 201 B.R. 371, 372 n. 1 (Bankr.D.N.J.1996). Where, however, the mortgagee has additional collateral, the antimodification clause is not applicable, and cramdown of a residential mortgage is permissible. *See In re Johns,* 37 F.3d 1021 (3d Cir.1994); *In re Hammond,* 27 F.3d 52 (3d Cir.1994); *Sapos v. Provident Institution of Savings,* 967 F.2d 918 (3d Cir.1992); and *Wilson v. Commonwealth Mortgage Corp.,* 895 F.2d 123 (3d Cir. 1990).

■ Citicorp's mortgage states that it includes

> . . . all improvements now or hereafter erected on the property, and all easements, rights, appurtenances, rents, royalties, mineral, oil and gas rights and profits, water rights and stock and all fixtures now or hereafter a part of the property.

"Property interests are created and defined by state law." *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979); *Nobelman,* 508 U.S. at 329, 113 S.Ct. 2106. New Jersey law therefore determines whether a particular type of property is realty or personalty.

N.J.S.A. 46:3–16, "Buildings and Other Things Included in Deed to Land," states as follows:

> Every deed conveying lands shall, unless an exception shall be made therein, be construed to include all and singular the building, improvements, ways, woods, waters, watercourses, rights, liberties, privileges, hereditaments and appurtenances to the same belonging or in anywise appertaining; and the reversion and reversions, remainder and remainders, rents, issues and profits thereof, and of every part and parcel thereof.

### A. *Rents*

■ The debtors argue that rents are personalty, the inclusion of which in the mortgage takes the mortgage out of the protection of the antimodification clause of Code section 1322(b)(2). In light of the inclusion of rents in the definition of real property in N.J.S.A. 46:3–16, the debtors' argument is without merit. *See In re Rosen,* 208 B.R. 345, 350 (D.N.J.1997); *In re Eastwood,* 192 B.R. 96, 106 (Bankr.D.N.J. 1996).

### B. *Fixtures*

■ The debtors also argue that the inclusion of fixtures as collateral under the mortgage takes the mortgage out of the antimodification clause. This court previously held in *In re Jones, supra,* that under the Third Circuit's *Hammond* and *Wilson* cases, a security interest in fixtures is additional collateral which takes a mortgage out of the antimodification clause. *In re Jones,* 201 B.R. at 375–76. It was subsequently held, however, in *Rosen,* that fixtures are realty under New Jersey

law. *In re Rosen*, 208 B.R. at 350, n. 9. This court agrees. *See In re Gain Electronics Corp.*, 117 B.R. 805, 811–12 (Bankr. D.N.J.1990). The court further notes that the Third Circuit cases of *Wilson, Sapos, Hammond* and *Johns* all dealt with real property located in Pennsylvania. The court is not aware of whether fixtures are considered realty or personalty under Pennsylvania law, but in New Jersey, fixtures are realty. The court therefore concludes that its prior opinions in *In re Jones, supra,* and *In re Pinto*, 191 B.R. 610 (Bankr.D.N.J.1996), were incorrect to the extent that they held that fixtures are not part of the realty.

### C. *Easements*

■ The debtors argue that easements are additional collateral for purposes of the antimodification clause. An easement is "an interest in land owned by another person, consisting in the right to use or control the land, or an area above or below it, for a specific limited purpose (such as to cross it for access to a public road)." Black's Law Dictionary 527 (7th ed.1999). The bundle of rights conveyed by deed as specified in N.J.S.A. 46:3–16 does not expressly include easements. It does, however, include "rights, liberties, privileges . . . to the same belonging or in anywise appertaining. . . ." The court holds that easements are part of the rights, liberties and privileges referred to in N.J.S.A. 46:3–16, and as such, they do not constitute additional collateral.

### D. *Condemnation Awards*

■ The debtors note that the mortgage also grants Citicorp a security interest in the proceeds of any condemnation awards. The debtors cite this court's prior decision in *Jones* that "the strict interpretation of the anti-modification provision in the Third Circuit compels this court to find

that the security interest in 'condemnation awards and insurance proceeds' is also additional collateral." *In re Jones*, 201 B.R. at 376.

■ A condemnation award is compensation paid when private property is taken for public use. A leading treatise on New Jersey law states:

It is well-settled that, as between a mortgagor—owner and a mortgagee, the condemnation award is a substitute for the land when all or part of the mortgaged land is taken for public use. Thus the lien of the mortgage attaches to the condemnation award.

29 N.J.Prac.Law of Mortgages § 165 (citing *Platt v. Bright*, 31 N.J.Eq. 81 (1879); *In re Falk Realty Co.*, 120 N.J.Eq. 10, 183 A. 721 (1936); and *County Park Commission v. Bigler*, 124 N.J.Eq. 378, 1 A.2d 935 (1938), mod. on other grounds 127 N.J.Eq. 4, 11 A.2d 86 (1940)).

■ The right of a mortgagee to a condemnation award under New Jersey law does not depend on any provision in the mortgage explicitly granting such right. The condemnation award is considered a substitute for the land as a matter of law. The inclusion in a mortgage of a reference to such right therefore does not constitute collateral separate from the mortgaged property. It follows that this court was incorrect in the statement in *Jones* that a security interest in condemnation awards is additional collateral.

Since none of the items the debtors have cited from the mortgage are additional collateral, *Nobelman* is on point and the antimodification clause of Code section 1322(b)(2) prevents modification of Citicorp's mortgage. It is therefore unnecessary to determine the value of the property or the interest rate which would apply if cramdown were permissible.[1]

---

1. Because the debtors have not argued that Citicorp has a security interest in an escrow account or insurance proceeds, it is unnecessary to revisit that part of the court's prior decisions in *Jones* and *Pinto* which held that such security interests are additional collateral for purposes of Code section 1322(b)(2). The court notes, however, that the Third Circuit stated in both *Hammond* and *Wilson* that a security interest in an escrow account nulli-

## II.

The second issue is whether Citicorp is entitled to interest on the mortgage arrears if there is no cramdown and the mortgage default is cured under the plan. The Supreme Court held in *Rake v. Wade,* 508 U.S. 464, 113 S.Ct. 2187, 124 L.Ed.2d 424 (1993), that an oversecured creditor is entitled to postpetition interest on mortgage arrears paid under a chapter 13 plan, even if the mortgage was silent on the subject and state law would not have required such interest to be paid. Code section 1322(e) overrules *Rake v. Wade,* but only as to mortgages entered into after October 22, 1994, which is the effective date of the Bankruptcy Reform Act of 1994. *See* Pub.L. 103–394, § 702(b)(2)(D) (Oct. 22, 1994). Since Citicorp's mortgage was entered into prior to October 22, 1994, *Rake v. Wade* is applicable in this case.

The debtors argue that Citicorp is undersecured, and the court should therefore deny interest in arrears pursuant to *In re Arvelo,* 176 B.R. 349 (Bankr.D.N.J.1995). Citicorp replies that its mortgage provides for interest on arrears, and therefore to cure the default the debtors must provide such interest under the plan. Citicorp also argues that it is fully secured, but even if it is undersecured, it is entitled to postpetition interest on arrears under *In re Brycki,* 161 B.R. 915 (Bankr.D.N.J.1993). ■ The mortgage in this case does not provide for interest on arrears. It provides that attorneys fees and other costs incurred by the mortgagee in the event of default are added to the principal, and that interest shall be paid thereon. That is not the same as providing for additional interest on all amounts in arrears. Citicorp is therefore incorrect that it is entitled to interest on arrears as a matter of contract.

■ The debtors' argument that *Arvelo* held that a mortgagee is not entitled to postpetition interest on arrears if the claim is undersecured is also incorrect. *Arvelo* held that if the mortgagee's claim is undersecured, it is entitled to postpetition interest on arrears based on the percentage of the entire claim that is secured. *In re Arvelo,* 176 B.R. at 357–59. In so doing, *Arvelo* disagreed with this court's decision in *Brycki* that where the chapter 13 plan proposes to cure arrears, interest shall be paid on the entire arrears regardless of whether the claim is oversecured or not. *Id.* at 356.

The court is not persuaded by *Arvelo* to modify the conclusion in *Brycki.* Most courts have allowed postconfirmation interest on arrearages after *Rake* to the full extent of the arrears as long as the arrearage claim is not larger than the allowed secured claim as defined by Code section 506(a). *See* Lundin, "Chapter 13 Bankruptcy" (2d ed.), 1997–98 Cumulative Supplement § 4.55 at 392. *See also In re Hardware,* 189 B.R. 273, 277 (Bankr. E.D.N.Y.1995) (allowing interest on arrears whether fully secured or undersecured "for the sheer reason that it would be inequitable not to provide such relief."). Citicorp is therefore entitled to interest under the plan on the entire amount of its arrears.

fies the antimodification clause. *Hammond,* 27 F.3d at 57. The district court held otherwise in *Rosen,* 208 B.R. at 351–54. Citicorp argues that *Rosen* overturns this court's prior decision in *Pinto.* That is incorrect for two reasons. First, the Third Circuit has held that "there is no such thing as the law of the district." *Threadgill v. Armstrong World Indus., Inc.,* 928 F.2d 1366, 1371 (3d Cir.1991). Thus, while the bankruptcy courts in this district certainly give substantial deference to decisions of the district court, we are not required by the doctrine of *stare decisis* to follow them. Secondly, both the district and bankruptcy courts *are* bound to follow decisions of the Third Circuit.

As to whether a security interest in insurance proceeds is additional collateral, as this court stated in *Jones,* that is a difficult issue as to which there is a split of authority. *See* 1 Lundin, Chapter 13 Bankruptcy (2d ed.), § 4.42. Some cases are cited in that treatise for the proposition that whether insurance is additional collateral depends upon the type of insurance.

**CONCLUSION**

In summary, the court holds as follows. First, Citicorp's mortgage is protected by the antimodification clause of Bankruptcy code section 1322(b)(2) and thus cannot be modified by the plan. Second, Citicorp is entitled to interest on the entire amount of its arrears under the plan.

When the court reserved decision on the debtor's motion on August 29, 2000, it also reserved decision on confirmation of the debtors' plan. The confirmation hearing is hereby rescheduled for **November 28, 2000 at 11:00 a.m.**

The attorney for Citicorp shall submit an order within five days under D.N.J. LBR 9072–1(c).