In re Larry C. BAKER and Patti L. Baker, Debtors.

Bankruptcy No. 99–25765 BM.
Motion No. 03–0169.

United States Bankruptcy Court, W.D. Pennsylvania.

Oct. 31, 2003.

Francis E. Corbett, Pittsburgh, PA, for Debtors.

Paul E. Skirtich, Pittsburgh, PA, for U.S. Dept. of Agriculture/Farm Service Agency.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Debtors have brought a motion to establish and authorize the payoff in full of allowed claims in their chapter 12 case from an inheritance debtor Larry Baker expects to receive. Debtors have made no provision in their motion, however, for payment of the unsecured portion of the allowed claim of United States Department of Agriculture, Farm Service Agency (hereinafter "FSA").

FSA objects to the proposed distribution to other unsecured creditors with allowed claims and insists that it too is entitled to payment in full of its allowed unsecured claim.

We agree with FSA for reasons articulated in this memorandum opinion. FSA is entitled to receive distribution in the amount of $32,707.16 as payment in full of the unsecured portion of its allowed claim.

## —FACTS—

Debtors, who are husband and wife, jointly own a 110–acre tract of land located at 165 Trexler Road, Loretto, Pennsylvania, on which they operate a dairy farm. They also jointly owned a 143–acre tract of land located at 362 Lincoln Road, Loretto, Pennsylvania, which they leased to third parties.

Debtors filed a voluntary joint chapter 11 petition on August 4, 1999.

AgChoice Farm Credit (hereinafter "AgChoice") was listed on the bankruptcy schedules as having an undisputed first-position mortgage lien against both of the properties. FSA was listed as having an undisputed second-position mortgage lien against both of the properties as well as a first-position security interest in livestock and equipment debtors use in operating their dairy farm.

FSA filed a timely proof of claim on December 16, 1999, in the amount of $235,110.84. The proof of claim expressly stated that this amount represented the total amount of the debt owed, not the actual value of its collateral, and that it was unsecured to the extent the value of the collateral was not sufficient to fully secure the claim. At no time did debtor or any other party in interest formally object to FSA's claim.

On January 12, 2000, AgChoice brought a motion for relief from the automatic stay to allow it to foreclose on its interest in the properties subject to its mortgage liens. A stipulation resolving the matter was approved on February 2, 2000. AgChoice agreed to withdraw its motion with respect to the Trexler Road property in return for debtors' agreement to make adequate protection payments in connection therewith. Debtors also consented to relief from stay with respect to the Lincoln Road property.

Upon motion by debtors, their case was converted to a chapter 12 proceeding on March 15, 2000. A chapter 12 trustee was appointed that same day.

Debtors filed an amended chapter 12 plan on July 7, 2000. Among other things, debtor proposed that the second-position mortgage lien of FSA against the Lincoln Road property would not be paid in light of the surrender of the property. The proposed plan further provided that FSA's secured interest in their livestock and farm equipment was in the amount of $98,916.00 and would paid with interest over a period of sixty months, with a balloon payment in the sixtieth month.

FSA objected to debtors' amended chapter 12 plan dated July 7, 2000. Among other things, FSA asserted that the plan failed to adequately recognize the extent of its secured interest in debtors' livestock and farm equipment. It specifically objected to the methodology debtors' employed in their liquidation analysis, wherein they discounted the value of their livestock and equipment by certain percentages and further deducted a ten-percent sales commission. According to FSA, the amount of its secured claim, "after surrender of the Lincoln Road property", was $151,991.00.

A modified order confirming debtors' amended chapter 12 plan dated July 7, 2000, issued on August 4, 2000. Among other things, the order provided that the allowed secured claim of FSA was *acknowledged* to be $151,991.00, the amount asserted by FSA. Debtors were directed to pay adequate protection to FSA for a period of six months and were to amend their chapter 12 plan yet another time by January 12, 2001, to address the "full payment" of FSA's claim.

In their amended chapter 12 plan submitted on January 12, 2001, debtors once again asserted that FSA's mortgage lien against the Lincoln Road property would not be paid due to its surrender. The plan further asserted once again that FSA's secured interest in debtors' livestock and farm equipment was $98,191.00 and was to be paid with interest over sixty months, with a balloon payment in the sixtieth month with funds received from the Farm Preservation Program. These funds, estimated at $99,000.00, were to be applied first to the FSA obligation until it was paid in full, after which remaining funds would be distributed to general unsecured creditors with allowed timely claims.

On April 4, 2002, debtors commenced an adversary action against FSA to determine the extent of FSA's secured status pursuant to § 506(a) of the Bankruptcy Code and to modify its claim accordingly pursuant to § 1222. Count I asserted that FSA's claim based on its mortgage lien against the Lincoln Road property was secured in the amount of $6,450.00. Count II asserted that FSA's claim based on its secured interest in debtors' livestock and farm equipment was secured in the amount of $91,548.00.

After consenting to have the adversary action decided on a case-stated basis, debtors and FSA submitted a joint stipulation of facts along with supporting briefs. Among other things, they stipulated that FSA's mortgage lien against the Lincoln Road property was secured in the amount of $6,450.00. They further stipulated that the *appraised* values of debtors' livestock and farm equipment were $71.600.00 and $73,900.00, respectively.

Debtors denied, however, that FSA's claim in reality was secured in the total amount of $ 151,950.00 ($6,450.00 + $71,600.00 + $73.900.00 = $151,950.00). According to debtors, the stipulated-to *appraised* values of their livestock and equipment did not accurately reflect the extent

to which FSA's claim was secured. A discount of forty percent plus a sales commission of ten percent, they asserted, should be applied to their livestock to reduce its actual value to $39,906.00. They further asserted that a discount of twenty percent plus a sales commission of ten percent should be applied to their farm equipment to reduce the actual value thereof to $51,250.00. According to debtors, FSA's claim was secured in the total amount of $97,876.00 ($6,450.00 + $39,520.00 + $51,250.00 = $97,876.00), not $151,950.00 as FSA maintains.

Judgment in favor of FSA and against debtors was entered in the adversary action on September 11, 2001. We determined that the extent of FSA's secured interest in debtors' livestock and farm equipment should be based on the appraised value of the collateral rather than on some discounted value as debtors had proposed. Debtors were directed to submit another chapter 12 plan which took the judgment into account. No appeal was taken of this order.

Debtors submitted yet another amended chapter 12 plan on December 12, 2001. Among other things, debtors asserted that FSA was undersecured with respect to its interest in the livestock and farm equipment and proposed paying the secured portion with interest over a sixty-month period. General unsecured creditors with timely-filed allowed claims were to receive a pro rata distribution of one percent starting in the fifty-fifth month.

FSA half-heartedly objected to the plan. If debtors executed new promissory notes and a new security agreement "to reflect the restructured debt", FSA indicated that it would withdraw its objection.

An order confirming debtors' amended plan dated December 12, 2001, issued on May 3, 2002. Among other things, the plan was modified to provide that the class of general unsecured creditors with timely-filed allowed claims would receive the greater of $7,500 or five percent of the amount of their allowed claims.

A sheriff's sale of the Lincoln Road property took place some time after AgChoice was granted relief from stay with respect to the property. The date of the sale is not indicated in the record of this case. AgChoice's first-position mortgage lien against the property was paid in full from the sale proceeds, with the remainder going to FSA in partial satisfaction of its second-position mortgage lien.

On January 3, 2003, debtors brought a motion to establish and authorize the payment of claims in their chapter 12 case. According to debtors, the parents of debtor Larry Baker had died and he has become a beneficiary of their testamentary estates. Debtors assert that sufficient funds will be available for the chapter 12 trustee to pay *in full* all allowed unsecured claims in their case.

Allowed secured claims are not at issue here. Debtors are directly paying such claims in accordance with the provisions of their confirmed plan dated December 12, 2001. Included among such claims are FSA's mortgage lien against the Trexler Road property and the secured portion of its interest in debtors' livestock and farm equipment.

In their motion, debtors propose having the chapter 12 trustee pay with the funds they anticipate receiving remaining allowed unsecured claims, including three allowed general unsecured claims. FSA, however, is *not* included among them. Debtors do not intend to and do not seek authorization to pay in any amount the unsecured portion of FSA's allowed claim. The total of the proposed payments, which includes the fee of their bankruptcy counsel, is $76,883.16. Debtors seek an order

establishing that the payments required in their confirmed chapter 12 plan can be accomplished by delivering this amount to the chapter 12 trustee.

As might be expected, FSA vigorously objected to debtors' proposal because payment of the unsecured portion of its allowed claim was not addressed.

Oral argument on debtors' motion and the opposition of FSA thereto was heard on August 20, 2003, after which each side in due course submitted a brief in support of its position.

## —DISCUSSION—

■ Section 506(a) of the Bankruptcy Code defines secured and unsecured claims for bankruptcy purposes. *Johns v Rousseau Mortgage Corp. (In re Johns)*, 37 F.3d 1021, 1023 (3d Cir.1994). It provides as follows:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim.

11 U.S.C. § 506(a).

A claim, proof which is filed under § 501 of the Bankruptcy Code, as FSA's claim in this case was, is deemed allowed unless a party in interest objects to the claim. 11 U.S.C. § 502(a). Neither debtors nor any other party in interest objected to FSA's proof of claim in the amount of $235,110.84.

■ Section 506(a) applies to chapter 12 cases. *See* 11 U.S.C. § 103(a). It sorts allowed claims into two classes. An allowed claim that is secured by a lien on a debtor's property is secured "to the extent of the value of such creditor's interest in

the estate's interest in such property". To the extent the claim exceeds that value, it is deemed to be *un* secured. Put another way, a claim is treated as a secured claim only up to the value of the collateral; any debt in excess of this amount becomes an unsecured claim. *McDonald v. Master Financial, Inc. (In re McDonald)*, 205 F.3d 606, 609 (3d Cir.), *cert. denied*, 531 U.S. 822, 121 S.Ct. 66, 148 L.Ed.2d 31 (2000).

■ If, as in the present matter, the value of the collateral securing an obligation is less than the amount of an allowed claim, it follows *by definition* that the claim is *un* secured in the amount of that deficiency. This principle does not apply only where the value of the collateral is equal to or greater than the amount of the allowed claim. In such instances, a creditor is either fully secured or oversecured.

The amount of FSA's allowed claim is $235,110.84. The value of the collateral securing its claim, it has been determined, is $151,950.00. It therefore should follow, by definition, that FSA's allowed claim is secured in this latter amount and is *unsecured* in the amount of $83,160.84 ($235,110.84—$151,950.00 = $83,160.84) minus the amount FSA received when debtors' Lincoln Road property was sold at a sheriff's sale.

When asked at oral argument on debtors' motion why this conclusion does not follow in this instance and why FSA would not have an allowed unsecured claim unless the amount it received from the sheriff's sale equaled or exceeded $83,160.84, counsel to debtor tried to change the subject. Counsel offered no good reason why we should conclude otherwise.

In their motion, debtors asserted that FSA is not entitled to an unsecured claim because it took no step to establish a deficiency claim. When pressed for authority

for the proposition that FSA was required to do so in light of the clear language of § 506(a), counsel to debtors conceded that he had none.

The most seemingly plausible argument debtors offered in support of their position was that FSA is not entitled to receive any distribution with respect to the unsecured portion of its claim because the precise amount FSA received from the sheriff's sale of the Lincoln Road property is not known. This assertion is devoid of merit.

The inference that FSA is not entitled to payment of the unsecured portion of its claim for this reason is a *non sequitur*. All that follows is that the precise amount of the distribution to which FSA is entitled must be determined, not that it is entitled to no distribution whatsoever.

Moreover, debtors' assertion that it is not known how much FSA received from the sheriff's sale of the Lincoln Road property is false, perhaps even disingenuous. FSA stated in its response to debtors' amended plan dated June 12, 2001, that it had received a total of $50,448.68 from the sale of the property. We see no reason to question the veracity of this statement and seriously doubt that it escaped debtors' notice.

From this information debtors (and their counsel) easily could have determined the outstanding amount of the unsecured portion of FSA's claim by utilizing simple arithmetic. The total amount of the unsecured portion of FSA's allowed claim, we previously determined, was $83,160.64. Subtracting from this the amount FSA received as a result of the sheriff's sale leaves an outstanding balance in the amount of $32,707.15 ($83,160.64—$50,448.68 = $32,707.16).

After reviewing the record in this case in its entirety, we conclude that for reasons of their own, debtors simply do not want to pay the unsecured portion of FSA's allowed. The reasons they have proffered for not paying this portion of FSA's allowed claim are bogus at best and must be rejected. If debtors propose paying other general unsecured creditors with allowed claims in full, FSA is entitled to the same treatment.

An appropriate order shall issue.

### ORDER OF COURT

AND NOW, at Pittsburgh this **31st** day of **October**, 2003, for reasons set forth in the accompany memorandum opinion, it hereby is **ORDERED, ADJUDGED,** and **DECREED** that United States Department of Agriculture, Farm Service Agency, is **ENTITLED** to receive $32,707.16 as payment in full of the unsecured portion of its allowed claim.

It is **SO ORDERED**.